CARL E. SMITH v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

(Filed 1 November, 1933.)

1. **Trial D a—Upon motion of nonsuit all the evidence is to be considered in the light most favorable to plaintiff.**

Upon a motion as of nonsuit all the evidence, whether offered by plaintiff or elicited from defendant's witnesses is to be considered in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

2. **Insurance R c—Ability to do odd jobs of comparatively trifling nature will not prevent recovery on disability provision of policy.**

An employee, insured under a group life insurance policy, brought suit on the provision of the policy providing for the payment of a certain sum monthly if insured should become "totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation or financial value." Plaintiff's evidence tended to show that he had consumption in an advanced stage, and that any physical exertion rendered his condition worse, and that plaintiff, a paint foreman, after his discharge for the disability sued on, did odd paint jobs netting him $67.00 over a period of a year and a half in order to provide some support for his wife and children: *Held*, after charging that the burden of proof was on plaintiff and that the disability must have prevented plaintiff from engaging in any occupation or performing any work for compensation, etc., it was not error for the court to charge that if plaintiff performed some work now and then of a trifling nature and thereby greatly reduced his strength and aggravated his disease, it would not be precluded recovery.

3. **Insurance P b—Under facts of this case failure to introduce group policy held not fatal in action on individual certificate.**

Where in an action by an employee on a group policy of life insurance, he introduces his individual certificate in evidence, his failure to introduce the group policy in evidence will not preclude recovery where the insurer admits in its answer that it had issued its individual certificate with the disability benefits sued on, and admits in evidence that it would be liable thereon if plaintiff were totally and permanently disabled within the meaning of its terms, and it appearing that insurer did not set up this defense in its pleadings, and the court's charge that if plaintiff applied to the company for information as to how to make out his claim and they told him he

would have to fill out certain blanks, and that he was out of them, and plaintiff filed a claim in his own handwriting, the best he could do under the circumstances, that it would be a substantial compliance with the requirements of the policy in this respect *is held* not prejudicial.

APPEAL by defendant from *Alley, J.,* and a jury, at April Term, 1933, of BUNCOMBE. No error.

This is an action brought by plaintiff against defendant to recover $503.50 for total permanent disability on a group life insurance policy, which also provided on death $500 payable to his wife, issued to him, dated 1 November, 1929—No. 3215-88. The material provisions of the policy to be considered, are as follows:

"(1) The insurance upon the life of any employee shall automatically cease upon the termination of his employment with the employer in the specified classes of employees, etc.

(2) Total and permanent disability provision: In the event that any employee, while insured under the aforesaid policy and before attaining age 60 becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the society will, in termination of all insurance of such employee under the policy, pay equal monthly disability installments, etc.

(3) The first payment shall be due upon receipt of said proofs and shall be for the amount of monthly disability installments accrued from the commencement of said total and permanent disability, and subsequent installments shall be paid monthly during the continuance of such disability until the completion of said installments."

The defendant denied liability and for a defense alleged: "that said individual certificate No. 3215-88 provides, among other things, that defendant's liability thereunder shall automatically cease upon the termination of the insured's employment with the employer in the specified class of employees. That on 27 August, 1931, American Enka Corporation, employer of the plaintiff, discharged said plaintiff for general unsatisfactory services; that the said plaintiff worked every day up to the date of said discharge, and was in good health and physical condition on said date and prior thereto," etc.

Defendant's witness Cooke, the paymaster, testified: "We paid him (plaintiff) the regular monthly salary for September." Again witness Cooke says "We paid him another two weeks salary on 15 September." Again says the same paymaster: "He came two weeks later and got a pay check." And defendant's witness Heykoop, an official of the company, testified: "He was to be paid to the end of September."

Plaintiff testified in part: "I paid the amount on this policy up until 30 September, 1931. Q. I hand you a piece of paper. I would like for you to state, if you can, what that is? A. I cannot see. A. (Examining under electric light): That is a stub of my check given me on 1 September, paying me up to and through 15 September, 1931, where the insurance shows up to be deducted there for the month of September. (Mr. Wright): I wish to read one item: 'Deductions, insurance $2.70.' (The Court): You can find if he has any other insurance. It must be connected with this, or I will strike it out. Still I see no necessity for pursuing that line when the defendant admits that they are liable if you show disability. (Mr. Wright): If they will admit it in the record. (Mr. DuBose): We say the insurance policy was in force according to its terms, from the day it was issued until the date of the termination of his employment, just exactly as the policy reads, whether he paid a nickel or $50.00. (The Court): You admit if he incurred or sustained total disability within that time, you would be liable for it? (Mr. Bernard): Yes." Plaintiff continued: "I began working for the American Enka Corporation 13 May, 1929, at 7:30, and continued working there until 27 August, 1931, when I was relieved from duty, but continued on the payroll until to and through 30 September, 1931. My duties were paint foreman in charge of paint when I began, and I continued in the same capacity all the time as paint foreman. . . . I was drawing full pay up to 30 September, 1931. The company relieved me from 27 August, 1931. . . . They did not require any work of me. I didn't pretend to work. . . . After that my physical condition got worse. Mr. Heykoop complained to me on two or three different occasions before that. Nobody else made any complaint to me. Mr. Gills called me in the office. He was the plant manager, production manager is the way he was rated, and he called me in his office and said to me, 'Mr. Smith, we are mighty sorry to have to do this, and we are especially sorry for your large family, and for this reason we are going to continue to pay you through the month of September, that you might have a long rest or vacation, whichever one you want to call it.' "

The evidence of plaintiff was to the further effect that during the period of over two years plaintiff worked for the company he was subjected to breathing sulphuric acid and ammonia fumes and gases, which adversely affected his lungs, throat and eyes; his back was strapped with adhesive tape and he went to Enka Hospital for treatment on a number of occasions; and in July, 1931, plaintiff informed one of the officials of the company that his physical condition had gotten so bad that he was unable to take care of his job. Plaintiff developed tuberculosis and his eyesight became very greatly impaired, so that in January, 1932, nine-tenths of his eyesight was gone and could not be recovered.

Dr. C. D. W. Colby, a witness for plaintiff, admitted a medical expert and a specialist on tuberculosis, testified in part: "At the time I examined Mr. Smith, 30 September, 1931, my recommendation and orders to him were to rest. It is impossible to give an opinion as to the duration of this physical condition prior to 30 September. Q. How long, in your opinion, had it existed? The whiteness of the nodes would indicate some long time, but the fuzz that surrounds the smaller branches of bronchial tree was of more recent date. I could not be exact. At the time I examined Mr. Smith I did not consider him fit to perform any physical labor without undue exhaustion."

Dr. S. S. Fay, a witness for plaintiff, a medical expert, testified in part: "I first examined Mr. Smith between 1 and 10 January, 1932. I don't know the exact date. . . . His retina is practically destroyed, and that particular tissue is never regenerated, so on vision alone, I consider him totally disabled. I did take the trouble to examine his chest, though he told me that he was under Dr. Colby's care there. He had bronchial breathing all over the chest on the left side, and at that time he had a dry pleurisy and some little cavity over his chest. He was troubled also with gastric trouble. The two things permanent I considered the chest and the vision as the disability. The others were side issues. I saw him last about the last of March. Q. Have you an opinion satisfactory to yourself as to whether or not the plaintiff, Carl E. Smith, is now permanently and totally disabled? A. Yes, I have an opinion. Q. What is that opinion? A. I believe that he is totally disabled from either point of view, either from chest or vision, that is, as to being capable of any gainful occupation. Both of them are permanent. I have an opinion satisfactory to myself as to whether or not this same condition that now exists, existed back in August, 1931, and September, 1931. Q. In your opinion, was the trouble that you found there of recent origin, or of some long standing? A. I should say that the chest condition was of long standing, because fibrous tissue to that extent cannot be formed in a short time. Q. How long do you think it would take to form that condition? A. It would be hard to put a definite time, but I would say a year or two; but as to the immediate activity nobody can say how long that took, but the old fibrous tissue was there for over a year. . . . He might be able to see to mix paint, but he is not physically able to do the painting, has not strength enough to do it, if he could do it, so that really the mixing is inconsequential. Any kind of work or exertion would wear him out very quickly. He has comparatively a small amount of lung tissue that is normal now, and it would just aggravate the condition and make it worse. His chest condition will never be any better, and if he exerts himself, it would just make it worse."

Plaintiff, after leaving the Enka Corporation suffering with tuberculosis, with a wife and seven children dependent upon him, in his depleted condition, attempted to earn a little money to buy something to eat. He obtained minor jobs of part-time work. About half of the money going for paint and about two-thirds of the balance for labor. Plaintiff retained not over $67.00 for what work he attempted to do, and this amount received covered a period of about a year and a half.

Numerous exceptions and assignments of error were made by defendant in the court below, the material ones will be considered in the opinion.

*Edward N. Wright and Eugene Taylor for plaintiff.*
*Bourne, Parker, Bernard & DuBose for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence, the defendant made motions for judgment as of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error. It is the well settled law in this jurisdiction that on a motion as of nonsuit all the evidence, whether offered by the plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to the plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom.

The first issue submitted to the jury was as follows: "Did the defendant issue and deliver to the plaintiff certificate of policy of insurance No. 3215-88, dated 1 November, 1929, as alleged in the complaint?" This issue was answered by consent "Yes." It was admitted that the premium on this policy was paid to 30 September, 1932.

The second issue is as follows: "Did the plaintiff prior to the termination of his employment with Enka Corporation become totally and permanently disabled by bodily injury or disease whereby he will presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation or financial value, as alleged in the complaint?" The jury answered "Yes" to this issue.

On this issue the court below, after placing the burden of the greater weight of the evidence on plaintiff and defining same, charged the jury in part: "On that issue I charge you that the language in the contract or policy of insurance means what it says. It means that if the plaintiff, prior to the termination of his employment with Enka Corporation, became totally and permanently disabled by bodily injury or disease so that thereby he will presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation or financial value, then, in that event, he would be entitled to be reimbursed by sums and amounts as provided in the policy, otherwise he

would not be so entitled.· . . . The language of the policy does not, however, mean merely that this disability may incapacitate the plaintiff from pursuing his usual avocation, that is, working as foreman of the painters crew, or from pursuing his trade as a painter by working with his own hands, but the language of the policy means that he must be totally and permanently disabled by bodily injury or disease whereby he will presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation or financial value. . . . I charge you, however, that the ability to do odd jobs now and then of comparatively trifling nature would not preclude his recovery. He might do some work of a comparatively trifling nature under some circumstances, yet be totally disabled within the meaning of that clause, in the language of the insurance policy sued on in this case. (If, for instance, he performed some work now and then of a trifling nature, which was not in pursuance of ordinary care and thereby aggravated the physical trouble of which he complains, and greatly reduced his strength, the fact that he performed such work would not preclude his recovery.)" To the latter part of the above charge in brackets, an exception and assignment of error was made by defendant. We do not think it can be sustained, taken in connection with the prior portion of the charge.

In *Lee v. Ins. Co.,* 188 N. C., 538, the language of the policy was: "Wholly incapacitated and thereby permanently and continuously prevented from engaging in any avocation whatsoever for remuneration or profit." The plaintiff was allowed to recover although he could attend to minor matters.

In *Bulluck v. Ins. Co.,* 200 N. C., 642 (646), speaking to the subject, we find: "The reasoning of the opinions seems to indicate that engaging in a gainful occupation is the ability of the insured to work with reasonable continuity in his usual occupation or in such an occupation as he is qualified physically and mentally, under all the circumstances, to perform substantially the reasonable and essential duties incident thereto. Hence, the ability to do odd jobs of comparatively trifling nature does not preclude recovery. Furthermore, our decisions and the decisions of courts generally, have established the principle that the jury, under proper instructions from the trial judge, must determine whether the insured has suffered such total disability as to render it 'impossible to follow a gainful occupation.'" The language in the Bulluck policy was: "*Total Disability:* Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation."

In *Green v. Casualty Co.,* 203 N. C., 767, the language of the policy was : "The company will pay said monthly sickness indemnity for the period not exceeding one year during which the *insured shall be wholly*

*and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of sickness,"* etc.

In the present case the language of the policy is: "Totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value."

The evidence in all the above cases and in the present case indicates that the jobs were of a trifling nature. Is it possible to construe a policy like the present to say that a man, although death-doomed with tuberculosis, and having a wife and seven children needing, as the plaintiff testified, "something to eat," if he should attempt in his wasted condition to try in a feeble way to do trifling work, that this was a forfeiture of his policy? Such a holding would be contrary to the spirit, if not the letter, of the contract.

The case of *Thigpen v. Ins. Co.,* 204 N. C., 551, in which the "court crier" received $40.00 a month for his services, is distinguishable.

We think the humanitarian charge of the judge in the court below is fully borne out by the decisions of this Court.

The third issue was as follows: "Did the defendant commit a breach of the terms and conditions of said policy of insurance by failing to pay the benefits provided, as alleged in the complaint? Answer: Yes."

The court below charged the jury on this issue: "The burden of this issue is likewise on the plaintiff to satisfy you by the greater weight of the evidence that his contentions in regard to that issue are true. A breach of contract in law is nothing more than a failure or refusal to perform the terms of the contract. Therefore, if you shall find by the greater weight of the evidence that the defendant in this case failed and refused to pay the benefits as required by the policy, then I charge you that such failure and refusal to pay would be a breach of contract and, in that event, it would be your duty to answer the third issue, Yes; otherwise, No."

The defendant contends that the question involved is: "Where a certificate of insurance is issued under a group insurance policy and said certificate provides that it is issued 'subject to the terms and conditions of the (group) policy,' and, 'This Individual Certificate is furnished in accordance with the terms of the Equitable Group Insurance Policy, which together with the employee's application therefor, constitutes the entire contract between the parties,' and the group policy is not offered in evidence, is the plaintiff entitled to recover?" We think so, under the facts and circumstances of this case.

On this aspect, the court below charged as follows: "If you find he applied to the company for information as to how and they told him he would have to fill out certain blanks, and that he was out of them, and

he then filed a claim in his own handwriting, the best he could do under the circumstances, I charge you that would be a substantial compliance with this requirement of the policy, and in that event, you would answer the second issue, Yes, provided you find the other facts on the second issue that I have already heretofore recited to you." The defendant excepted and assigned error. We do not think this assignment of error can be sustained. Under the facts and circumstances in this case, the charge was not prejudicial. In its answer this contention was not made by defendant company, but it admitted "That it issued to the plaintiff Individual Certificate No. 3215-88 in the sum of $500.00 dated 1 November, 1929, with disability provisions as therein contained." Defendant nowhere sets up this defense and tendered no issue, and in fact only tendered the following issue, which was, in accordance with the defense set up in its further answer of defendant: "Did the plaintiff become totally and permanently disabled by a bodily injury or disease to such extent that he will be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, prior to the termination of his employment, 27 August, 1931?" The admission in the evidence is as follows: "The court: You admit if he incurred or sustained total disability within that time, you would be liable for it? The answer of defendant's attorney was Yes." *Taylor v. Ins. Co.,* 202 N. C., 659.

The facts in the case of *Ammons v. Assurance Society, ante,* 23, are different and the case distinguishable.

The admission of certain evidence, the motion to strike out answers of witnesses, the refusal of the court to submit issue tendered by defendant, the exceptions to certain portion of the charge of the court below, excepted to and assigned as errors by defendant, we do not think prejudicial.

The court below tried the case carefully and the charge fully set forth the contentions of the parties and applied the law applicable to the facts. In law we find

No error.