THE FIRST NATIONAL BANK OF ANSON COUNTY, ADMINISTRATOR OF THE ESTATE OF JOHN GATEWOOD, DECEASED, PLAINTIFF AND BRIGHT M. GATEWOOD, ADDITIONAL PLAINTIFF v. NATIONWIDE INSURANCE COMPANY AND HORNWOOD, INC., DEFENDANTS

No. 70

(Filed 2 June 1981)

1. **Insurance § 42— group insurance policy—notice of disability—employer not agent of insurer**

     The employer in a group insurance policy is not ordinarily the agent of the insurance company, and notice to the employer of a disability is not notice to the insurer.

2. **Insurance § 15.4— group life insurance—waiver of premiums for disability—termination of coverage upon termination of employment**

     Even if timely notice of decedent's total disability had been given to defendant insurer, decedent's coverage under a group life insurance policy by reason of a provision for waiver of premiums in the event of total disability ended on the date he was discharged from employment, since that was the date of "his termination of membership in the classes eligible for coverage"; therefore, decedent's beneficiaries of the group policy had no claim for benefits against the insurer where there was no conversion of the group coverage on decedent to single life insurance within the time permitted by the policy.

ON discretionary review of decision of the Court of Appeals, 49 N.C. App. 365, 271 S.E. 2d 528 (1980), which affirmed the judgment of *Honeycutt, J.,* entered 4 October 1979 in ANSON District Court.

This is an action to recover death benefits on a group life insurance policy. The action was brought by plaintiff, First National Bank, as administrator of the estate of John Gatewood, against defendant Nationwide, the insurer of the group policy. Gatewood's employer, Hornwood, was subsequently joined as a defendant. Gatewood's widow, Bright M. Gatewood, was subsequently joined as plaintiff. The basic points in litigation were (1) whether the group policy was in full force and effect by operation of a Waiver of Premium Clause on the date Gatewood died and (2) if so, whether the proceeds were payable to the administrator of Gatewood's estate or to his wife.

By stipulation of the parties, the case was heard by the trial judge without a jury. The trial judge determined that the group policy was in effect and that the widow was entitled to the pro-

ceeds. Judgment in favor of the additional plaintiff Bright M. Gatewood in the amount of $7,000 was entered. The plaintiff administrator and both defendants appealed. The judgment was affirmed by the Court of Appeals and we allowed defendants' petition for discretionary review.

*Henry T. Drake, attorney for plaintiff appellee.*

*E. A. Hightower, attorney for additional plaintiff appellee.*

*Taylor and Bower by George C. Bower, Jr., attorneys for defendant appellants.*

HUSKINS, Justice.

The only issue we need address is whether the group insurance policy was in effect as of the date of John Gatewood's death. We have concluded that it was not in effect and the Court of Appeals erred in holding to the contrary. Because the group policy was not in effect, we do not reach the issue whether the widow or the administrator was entitled to the proceeds of the policy. We first examine the facts of the case and the relevant language in the policy and then apply the appropriate rules of law.

I.

On 30 April 1971 decedent John Gatewood was employed as a custodian by defendant Hornwood, Inc. which operates a textile plant in Anson County. Hornwood was policyholder of a group insurance policy issued to it by defendant Nationwide for the benefit of Hornwood employees. At the time he applied for the job, decedent enrolled as a certificateholder for life insurance coverage under the group policy and designated his wife, Bright M. Gatewood, as beneficiary on enrollment and register cards. The policy was effective 30 June 1971. Nationwide canceled the original group policy and issued another group insurance policy to Hornwood on 1 June 1972 which remained in effect with Hornwood through the date of Gatewood's death. The new policy was the same as the original except it added dependent coverage. No enrollment or beneficiary card was entered on the new policy by Gatewood. Gatewood and his employer both contributed to the payment of premiums. Gatewood's contribution was deducted from his paycheck. Hornwood, as policyholder, forwarded the

premium for all its employees to Nationwide each month and also notified Nationwide each month of the names and changes in status of its employees. Hornwood handled all the paperwork related to the policy while it was in effect.

On 13 November 1973, Gatewood suffered an injury by accident arising out of and in the course of his employment. The injury was to his right wrist and so disabling that he could not lift heavy objects thereby precluding his working as a janitor. The accident rendered him totally unable to earn wages. He received worker's compensation benefits from 14 November 1973 until his death on 9 December 1975. He continued to come to work until 30 January 1974 but did not return to work at Hornwood after that date.

Decedent's employment with Hornwood was terminated on 7 August 1974. The reason given for the termination was an employment cutback for economic reasons. The separation notice gave "no work available" as the reason for termination.

Until Gatewood's termination of employment in August 1974, Hornwood had continued to pay premiums for decedent's coverage under the group insurance policy. Gatewood continued to contribute to the coverage while receiving worker's compensation benefits. The Hornwood personnel manager testified:

> During the time he was paid compensation, John Gatewood contributed toward the payment of the premium of the policy. He was supposed to pay it weekly. He brought the premium by. I don't know of any record of premium payments made during disability. We don't have any records concerning this that I know of.

(Testimony to the same effect by another Hornwood employee in the personnel office was subsequently excluded by the trial court.) No premiums were paid after 1 August 1974. The policy had a provision for waiver of premiums in the event of total disability. The personnel manager, whose office was responsible for preparing the monthly report to Nationwide, was aware of Gatewood's injury and his receipt of worker's compensation benefits. No waiver of premium claim or notice of disability claim was filed with Nationwide. In its monthly status report to Nationwide for August, Hornwood listed Gatewood as terminated rather than disabled.

On 9 December 1975, Gatewood died of stab wounds. In January 1976, at the request of decedent's administrator, Hornwood sent Nationwide notice of Gatewood's death and earlier disability. The administrator contended the policy was in full force and effect by operation of the clause in the policy for waiver of premium in the event the certificateholder was disabled. No claim for waiver of premium had been filed with Nationwide until this time. Nationwide refused to pay under the group policy and this suit was instituted.

II.

The insurance contract under which Gatewood's widow and the administrator of his estate claim benefits is a group insurance policy. The portions of the policy dealing with payment or waiver of premiums, termination and conversion are the provisions important to this case and therefore the ones which we will examine in detail.

There are two documents in group insurance contracts: the policy and the certificate of insurance. The policy was issued by Nationwide (insurer) to Hornwood, Inc. (policyholder) "to insure certain employees of the policyholder and its subsidiaries." The Certificate of Insurance, which was issued to each insured employee (certificateholder), summarizes certain provisions of the master policy. The Certificate of Insurance refers the certificateholder to the "Policy, which alone constitutes the agreement under which payments are made." We, therefore, look first to the master policy. *See Smith v. Assurance Society,* 205 N.C. 387, 171 S.E. 346 (1933); *see generally,* 1 Appleman, Insurance Law § 46.

The insurance became effective for what the policy defines as an "Eligible Person" on the latest of the following dates:

(1) the date he becomes an Eligible Person if he enrolls on or before that date;

(2) the date he enrolls, if he enrolls within 31 days after he becomes an Eligible Person;

(3) the date of approval of his application by the Company if he enrolls more than 31 days after he becomes an Eligible Person.

The policy defines "Eligible Person" as "any person who (1) on the effective date of this Policy, is regularly employed by the Policyholder; or (2) subsequent to the effective date of this Policy, has been regularly employed by the Policyholder not less than 2 months." The policy contains the following provision concerning the termination of insurance for an individual certificateholder:

A Certificateholder's coverage under any benefit provision of the Policy terminates upon the first occurrence of the following:

(1) . . .

(2) . . .

(3) . . .

(4) his termination of membership in the classes eligible for coverage under that benefit provision, but membership in the classes eligible for coverage under any benefit provision set forth in the Schedule of Maximum Continuation Periods below will not be deemed to terminate solely because of the Certificateholder's disability until contributions for his coverage are discontinued or until expiration of the applicable Maximum Continuation Period set forth in that Schedule, whichever is earlier.

Schedule of Maximum Continuation Periods

| Benefit Provision | Reason for Termination | Maximum Continuation Period |
|---|---|---|
| All Coverages except Weekly Indemnity Benefits | Disability | Until terminated by Policyholder |

The policy provides a conversion privilege in the event of termination. The policy clause on this matter reads as follows:

CONVERSION PRIVILEGE. If a Certificateholder's insurance hereunder ceases because of termination of membership in the classes eligible for insurance or any part of it ceases because of retirement, age, or change in classification, the Certificateholder will be entitled to convert all or part of the terminated insurance, without evidence of insurability, to an

individual policy of life insurance, provided written application and the first premium payment are made to the Company within thirty-one days from the date of termination. The individual policy will be upon any one of the forms then customarily issued by the Company, except term insurance or any policy containing disability benefits, and, at the option of the Certificateholder, may be preceded by single premium preliminary term insurance for a period not to exceed one year from the date of termination of his insurance. The premium payable for the individual policy will be based upon the Company's rate applicable to the class of risks to which the Certificateholder belongs and to the form and amount of the policy at the Certificateholder's attained age on the effective date of the individual policy.

.  .  .  .

Any individual policy issued in accordance with the provisions of this section will become effective at the end of the thirty-one day period during which application for it may be made and will be in place of all the terminated insurance under the Policy.

A Certificateholder's insurance will continue during the thirty-one days within which he is eligible to exercise the Conversion Privilege, whether or not he has applied for conversion. If he dies during this period, the Company will pay as a death benefit the maximum amount he was eligible to convert.

Premium payments are governed by the following two clauses in the policy:

(1) Premiums are payable by the Policyholder in amounts determined as herein provided. The first premium is due on the Effective Date, and subsequent premiums are due monthly on the first day of each month thereafter.

(2) PAYMENT OF PREMIUMS — GRACE PERIOD. All premiums due by the terms of the Policy including adjustment thereof, if any, are payable by the Policyholder at the Home Office of the Company in Columbus, Ohio, on or before the date upon which they fall due as specified on the first page of the Policy. The payment of any premium

will not maintain the insurance in force beyond the day immediately preceding the next due date except as otherwise herein provided. Upon written request by the Policyholder, approved by the Company, the method of premium payment may be changed to provide for payment annually, semi-annually, quarterly, or monthly.

If, prior to the due date of any premium, the Policyholder has not given written notice to the Company that the Policy is to be terminated as of the due date of the premium, a grace period of thirty-one days, without interest, is allowed the Policyholder for payment of any premium due after the first, during which time the Policy will continue in force. If any premium is not paid prior to the expiration of the grace period, the Policy will terminate on the last day of the grace period and the Policyholder will be liable to the Company for the payment of all premiums then due and unpaid, including the premium for the grace period. If written notice is given by the Policyholder to the Company during the grace period that the Policy is to be terminated before the expiration of the grace period, the Policy will terminate on the date the notice is received by the Company or the date specified by the Policyholder for termination, whichever is later, and the Policyholder will be liable to the Company for the payment of the pro rata premium for the time the Policy was in force during the grace period.

The policy also contains a clause entitled "WAIVER OF PREMIUM IN THE EVENT OF TOTAL DISABILITY" which reads:

If a Certificateholder becomes totally disabled prior to his 60th birthday and satisfactory proof is furnished within one year after he becomes totally disabled and while the Policy is in force, that his total disability has continued uninterruptedly for a period of at least six months and to the date that proof is furnished, the Company will continue the Life Insurance on the Certificateholder without payment of premium during the further uninterrupted continuance of his total disability. If the Certificateholder dies during such a period of total disability but prior to the date that satisfactory proof of total disability is furnished, the Company will

pay an amount equal to that which would have been continued if satisfactory proof of his total disability had been furnished. The amount of insurance continued or paid will be the amount for which he was insured on the date he became totally disabled, subject to any reduction at a specified age or other specified time as stated in the Schedule of Benefits.

If a Certificateholder dies while insurance is being continued in accordance with this provision, the Company will pay the amount then being continued on his life, provided notice of his death is given to the Company's home office within one year after the date of his death.

Proof of the continuance of total disability satisfactory to the Company must be submitted to the Company's home office on request, but not more often than once a year after total disability has continued for two years. The Company may, at its own expense, examine the Certificateholder when and so often as it may reasonably require, but not more often than once a year after disability has continued for two years.

If the Certificateholder ceases to be totally disabled or if he fails to submit to the Company, within a reasonable time after request therefor by the Company, satisfactory proof of the continuance of his total disability or if he refuses to be examined as above required by the Company, all insurance of the Certificateholder under this provision shall immediately terminate and the Certificateholder will be entitled to exercise the Conversion Privilege set forth in this Policy as though his eligibility had then terminated, unless he again becomes eligible for insurance under this Policy and becomes insured hereunder within 31 days after termination. If his Life Insurance is discontinued by reason of termination of the Policy or amendment of the Policy to terminate the Life Insurance on the class of Certificateholders of which he is a member, the Certificateholder will be entitled to exercise the applicable Conversion Privilege set forth in the Policy.

Exercise of the Conversion Privilege set forth in the Policy by the Certificateholder will automatically terminate the continuation of death benefit under this provision with respect to an amount equal to the face amount of the individual policy, unless it is surrendered to the Company for cancella-

tion, without claim, during the Certificateholder's lifetime and while this Policy is in force in which event premiums paid on account of the individual policy less dividends will be refunded by the Company. The beneficiary designation of an individual policy issued or applied for pursuant to the Conversion Privilege will be considered notice of change of beneficiary with respect to this Policy, notwithstanding any other provision in this Policy.

The policy in the definitions section states:

"Totally Disabled" and "Total Disability", unless otherwise specifically defined, refer to disability resulting solely from a sickness or accidental bodily injury which prevents a Certificateholder from engaging in any occupation or employment for compensation or profit.

Finally, the policy contains the following relevant provision for keeping records:

RECORDS AND REPORTS. The Policyholder will keep a record which will show at all times the names of the Certificateholders and the essential particulars of each Certificateholder's insurance. The Policyholder will periodically furnish the Company, on forms satisfactory to the Company, such information concerning the persons in the classes eligible for the insurance under the Policy as may be considered reasonably pertinent to the determination of the premium rates and the efficient administration of the insurance. The Company will be permitted the opportunity at all reasonable times to inspect the Policyholder's records to the extent that they have a bearing on the insurance.

If an Eligible Person has made written request to the Policyholder, on a form furnished by the Company, to participate in the insurance under the Policy and has made the required contributions, his insurance will not be invalidated by the failure of the Policyholder, due to clerical error, to record or report him for insurance. Failure to report the termination of insurance of any Certificateholder will not cause his insurance to be continued beyond the date of termination determined in accordance with the provisions hereof.

The Certificate of Insurance issued to Gatewood was introduced into evidence at trial. It contains verbatim the effective date, definition, termination, conversion and waiver of premium clauses quoted above. It does not contain the payment of premium and records and reports clauses quoted above. The insured is charged with notice of the provisions in the certificate of insurance. *Rivers v. Insurance Co.*, 245 N.C. 461, 96 S.E. 2d 431 (1957).

### III.

The policy specifies the contract is governed by the laws of North Carolina. The policy also specifies that "any provision . . . which . . . is in conflict with the statutes of the state . . . is hereby amended to conform to the minimum requirements of those statutes." Some of the legislation applicable to Group Life Insurance was amended in 1977, since the time the policy in question was issued and since Gatewood's death. 1977 N.C. Sess. Laws c. 192 §§ 1-4, c. 835. This discussion is limited to the statutes as they existed before amendment.

Group life insurance policies are allowed in this State subject to the approval of the Commissioner of Insurance. G.S. 58-30.2. The type of group life insurance involved in this case is defined in G.S. 58-210(1). Standard provisions for group life insurance are contained in G.S. 58-211. The standard provisions relevant to this suit are those dealing with termination of group life insurance, conversion to individual life insurance and payment of premiums. Those provisions within G.S. 58-211 read as follows:

> No policy of group life insurance shall be delivered in this State unless it contains in substance the following provisions, or provisions which in the opinion of the Commissioner are more favorable to the persons insured, or at least as favorable to the persons insured and more favorable to the policyholder, provided, however, (i) that subdivisions (6) to (10) inclusive shall not apply to policies issued to a creditor to insure debtors of such creditor; (ii) that the standard provisions required for individual life insurance policies shall not apply to group life insurance policies; and (iii) that if the group life insurance policy is on a plan of insurance other than the term plan, it shall contain a nonforfeiture provision or provisions which in the opinion of the Commissioner is or

are equitable to the insured persons and to the policyholder, but nothing herein shall be construed to require that group life insurance policies contain the same nonforfeiture provisions as are required for individual life insurance policies:

(1) A provision that the policyholder is entitled to a grace period of 31 days for the payment of any premium due except the first, during which grace period the death benefit coverage shall continue in force, unless the policyholder shall have given the insurer written notice of discontinuance in advance of the date of discontinuance and in accordance with the terms of the policy. The policy may provide that the policyholder shall be liable to the insurer for the payment of a pro rata premium for the time the policy was in force during such grace period.

.   .   .   .

(7) A provision that the insurer will issue to the policyholder for delivery to each person insured an individual certificate setting forth a statement as to the insurance protection to which he is entitled, to whom the insurance benefits are payable, and the rights and conditions set forth in (8), (9) and (10) following.

(8) A provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided application for the individual policy shall be made, and the first premium paid to the insurer, within 31 days after such termination, and provided further that,

a. The individual policy shall, at the option of such person, be on any one of the forms, except term insurance, then customarily issued by the insurer at the age and for the amount applied for;

> b. The individual policy shall be in an amount not in excess of the amount of life insurance which ceases because of such termination, provided that any amount of insurance which shall have matured on or before the date of such termination as an endowment payable to the person insured, whether in one sum or in installments or in the form of an annuity, shall not, for the purposes of this provision, be included in the amount which is considered to cease because of such termination; and
>
> c. The premium on the individual policy shall be at the insurer's then customary rate applicable to the form and amount of the individual policy, to the class of risk to which such person then belongs, and to his age attained on the effective date of the individual policy.
>
> . . . .
>
> (10) A provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with (8) or (9) above and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

On review, the policy comports with all these statutory provisions.

[1] The case law in this jurisdiction clearly establishes that the employer-master policyholder is not ordinarily the agent of the insurer. Rather, he is the agent of the employee-certificateholder. *Rivers v. Insurance Co.*, 245 N.C. 461, 96 S.E. 2d 431 (1957); *Haneline v. Casket Co.*, 238 N.C. 127, 76 S.E. 2d 372 (1953); *Dewease v. Insurance Co.*, 208 N.C. 732, 182 S.E. 447 (1935); *Ammons v. Assurance Society*, 205 N.C. 23, 169 S.E. 807 (1933). There is contrary authority in other jurisdictions. *See* 1 Appleman, In-

surance Law § 43; 19 Couch on Insurance 2d § 82:55. The rationale behind our rule, that the employer in a group insurance policy is not ordinarily the agent of the insurance company, is best summarized in *Boseman v. Insurance Co.*, 301 U.S. 196, 81 L.Ed. 1036, 57 S.Ct. 686 (1937), which has been quoted in several of our cases:

> Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves.

301 U.S. at 204-05, 81 L.Ed. at 1041, 57 S.Ct. at 690. A corollary of this rule is that notice to the employer of a disability is not notice to the insurer. *Dewease v. Insurance Co.*, supra.

The defendant insurer argues this rule of agency exempts it from liability. Nationwide had no notice of disability or claim of premiums waiver filed with it until after Gatewood's death. Premiums were paid in behalf of Gatewood through 1 August 1974. The Change Report filed by Hornwood for the month of August reported to Nationwide that employee Gatewood was terminated on 1 August 1974. The Change Report has an adjustment code which provides the following codes:

* Adjustment Codes:

1  — Addition
2  — Cancellation (Give Reason, i.e.)
2A — Cancellation requested
2B — Termination of Employment
2C — Temporary lay-off or leave-of-absence
2D — Sickness or injury
2E — Retirement
2F — Death
3  — Dependent Addition
4  — Dependent Cancellation
5  — Change in Class
6  — Reinstatement

Gatewood was given a 2B adjustment code. Nationwide's only information on Gatewood was (1) that he was a covered employee whose premiums had been paid through 1 August 1974 and (2) he was no longer a covered employee after 1 August 1974 because his employment had been terminated. Its only notice came in January 1976 after the death of Gatewood. There is merit in the insurer's defense, and we do not choose to overrule our case law on the agency relationship of the employer-master policyholder. However, there is a more fundamental flaw in the right of any beneficiary of Gatewood to recover under this group insurance policy.

Both the trial court and the Court of Appeals resolved this case by examining only the waiver of premium clause. They determined the clause was ambiguous because it did not explicitly state whether the employee or the employer was to notify the insurer of the disability which Gatewood had and which would result in a waiver of premium payments. The Court of Appeals relied on the principle of law that when there is an ambiguity and the policy provisions are susceptible to two interpretations, one of which imposes liability on the company and the other does not, the provisions will be construed in favor of coverage and against the insurer. *See, e.g., Williams v. Insurance Co.*, 269 N.C. 235, 152 S.E. 2d 102 (1967). This principle is applicable, however, only when there is an ambiguity. The problem in this case is that the ambiguity arises only when the waiver clause is read out of context. It must be read and interpreted in context and in conjunction with the termination clause and the conversion privilege clause. When this is done, there is no ambiguity in the policy.

[2] The policy termination provision applicable to Gatewood provided his benefits terminated upon

> his termination of membership in the classes eligible for coverage under that benefit provision, but membership in the classes eligible for coverage under any benefit provision set forth in the Schedule of Maximum Continuation Periods below will not be deemed to terminate solely because of the Certificateholder's disability until contributions for his coverage are discontinued or until expiration of the applicable Maximum Continuation Period set forth in that Schedule, whichever is earlier.

Schedule of Maximum Continuation Periods

| Benefit Provision | Reason for Termination | Maximum Continuation Period |
|---|---|---|
| All Coverages except Weekly Indemnity Benefits | Disability | Until terminated by Policyholder |

Quite simply, Gatewood's coverage under the group policy ended on 7 August 1974, the date he was discharged from employment. That was the date of "his termination of membership in the classes eligible for coverage." And even if we look to the continuation period, his coverage was terminated on 7 August 1974. Even though Gatewood was disabled and even if we assume error in not reporting disability which was imputable to Nationwide, the coverage remained in effect until the earlier of (1) "until contributions for his coverage are discontinued" or (2) "until expiration of the applicable Maximum Continuation Period" which was "[u]ntil terminated by Policyholder." If the policyholder had notified Nationwide of the certificateholder's disability, upon termination of the certificateholder, the group policy coverage for the disabled certificateholder would have ended in any event. Hornwood, the master-policyholder, terminated Gatewood on 7 August 1974. Gatewood's group insurance coverage ended that day. Group insurance coverage lasts only as long as membership in the group is maintained or as long as extended once membership in the group ends. Group coverage must then be timely converted to individual coverage.

By the terms of the policy, which is in compliance with G.S. 58-211(8), Gatewood had thirty-one days from and after 7 August 1974 to convert his group life insurance coverage to single life coverage. Gatewood never exercised this conversion privilege. Thus, when he died on 5 December 1975, the coverage under the group policy had long ago terminated and the conversion privilege had never been timely exercised. *See generally*, 1 Appleman, Insurance Law § 125; 19 Couch on Insurance 2d § 82:29.

This reasoning is consistent with that applied in *Love v. Assurance Co.*, 251 N.C. 85, 110 S.E. 2d 603 (1959). In that case, the beneficiary under a group life insurance policy instituted an

action to recover death benefits under a policy which had been issued by the defendant. John H. Love, Sr. was a member of a musician's association which had a noncontributory group life insurance policy with the defendant. Love was a certificateholder under the policy. Love's membership in the musician's association terminated on 15 August 1956. Plaintiff introduced evidence that Love was disabled as early as 24 April 1956. No notice of this disability was given to defendant insurer until after Love's death on 15 January 1957. The group policy did contain a conversion privilege which was not exercised. The Court affirmed judgment of nonsuit for the defendant insurer. The Court held that upon termination of the insured's membership in the association holding the group policy, the insured's coverage terminates unless he avails himself of the conversion privilege in the policy or his termination from membership is shown to be wrongful or fraudulent.

> [T]he insured could not retain his insurance under the group policy separate and apart from membership in the Association. Consequently, when his membership in the Association was terminated, his rights were then relegated to the conversion privilege as set out in his certificate of insurance — a privilege which he never asserted.

251 N.C. at 87, 110 S.E. 2d at 605. *See also Pearson v. Assurance Society*, 212 N.C. 731, 194 S.E. 661 (1938). The insurance policy in the *Love* case also contained a waiver of premiums upon disability provision. The Court rejected an argument that this waiver clause extended the life of the group policy. The Court said:

> Conceding, but not deciding, that the insured became totally disabled within the meaning of the provisions of the policy from and after 24 April 1956 until his death, since notice of such disability was never communicated to the defendant until after the insured's death, the plaintiff is not entitled to recover on the policy pursuant to the provisions for waiver of premiums.

251 N.C. at 87, 110 S.E. 2d at 605.

In light of the termination and conversion clause, the waiver of premium clause in the present case is not ambiguous. Premiums are waived for a totally disabled *certificateholder.*

After 7 August 1974, Gatewood was no longer a certificateholder. The waiver clause makes reference to the conversion privilege and the consequence of its exercise:

> If his Life Insurance is discontinued by reason of termination of the Policy or amendment of the Policy to terminate the Life Insurance on the class of Certificateholders of which he is a member, the Certificateholder will be entitled to exercise the applicable Conversion Privilege set forth in the Policy.

> Exercise of the Conversion Privilege set forth in the Policy by the Certificateholder will automatically terminate the continuation of death benefit under this provision with respect to an amount equal to the face amount of the individual policy, unless it is surrendered to the Company for cancellation, without claim, during the Certificateholder's lifetime and while this Policy is in force in which event premiums paid on account of the individual policy less dividends will be refunded by the Company.

The trial court award was only against the insurer. The trial court did find the employer-master policyholder negligently failed to keep records and make reports as it was required to do under the terms of the policy, and it negligently reported Gatewood as terminated when it should have reported him disabled. The trial court entered no judgment against the employer. This negligence is, however, of no consequence. Even if disability notice had been given to Nationwide, the policy coverage by waiver of premiums ended with the termination of Gatewood's employment. Evidence in the record indicates Gatewood and his employer continued to pay the premiums until Gatewood's discharge from employment. No waiver of premium was sought while the policy was in effect. If this constituted negligence, the negligence was superseded and insulated by Gatewood's failure to convert his coverage.

Accordingly, we hold that when group life insurance coverage is terminated and there is no conversion of that coverage to single life insurance, the beneficiaries of the group policy have no claim for benefits from the insurer.

The Court of Appeals opinion affirming the trial court's determination that the group insurance policy was in effect by operation of the waiver of premium clause at Gatewood's death is

reversed. The case is remanded to the Court of Appeals for further remand to the trial court for entry of judgment in favor of both defendants.

Reversed and remanded.