**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1332**

THE TRAVELERS INDEMNITY COMPANY, on its own behalf and as Assignee of Surry County, North Carolina,

Plaintiff - Appellant,

v.

AMERICAN ALTERNATIVE INSURANCE CORPORATION,

Defendant - Appellee.

**No. 24-1370**

THE TRAVELERS INDEMNITY COMPANY, on its own behalf and as Assignee of Surry County, North Carolina,

Plaintiff - Appellee,

v.

AMERICAN ALTERNATIVE INSURANCE CORPORATION,

Defendant - Appellant.

Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, Senior District Judge.  (1:22-cv-00404-LCB-LPA)

Argued:  January 31, 2025                          Decided:  April 8, 2025

---

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Thacker joined.

---

**ARGUED:** Mark A. Michael, ROBINSON GOODING LAW, Charlotte, North Carolina, for Appellant/Cross-Appellee. Louis Howard Kozloff, KENNEDYS CMK LLP, Philadelphia, Pennsylvania, for Appellee/Cross-Appellant. **ON BRIEF:** William R. Myers, HEDRICK GARDNER KINCHELOE & GAROFALO, LLP, Charlotte, North Carolina, for Appellant/Cross-Appellee. J. Matthew Little, Raleigh, North Carolina, William A. Bulfer, TEAGUE, CAMPBELL, DENNIS & GORHAM, LLP, Asheville, North Carolina; Eileen M. Bradley, KENNEDYS CMK, LLP, Philadelphia, Pennsylvania, for Appellee/Cross-Appellant.

NIEMEYER, Circuit Judge:

In response to a 911 call from an occupant on the second floor of a burning apartment building in Surry County, North Carolina, the Surry County 911 dispatcher advised the caller not to "bust the window," believing that the air would only provide fuel to the fire. As a result, four occupants on the second floor died from smoke inhalation. Their estates sued Surry County and two 911 dispatchers, claiming that they were negligent.

The Travelers Indemnity Company, which insured Surry County with a general liability policy providing $1 million of coverage and an excess policy providing $8 million of coverage, settled the estates' claims, paying the policies' limits of $9 million. It then commenced this action against American Alternative Insurance Corporation ("AAIC"), which had also issued a policy to Surry County, seeking a contribution to the settlement. The AAIC policy provided primary coverage of $1 million and excess coverage of $7 million, and the named insured on that policy was "Surry County Emergency Services," a department of Surry County distinct from the County's 911 call center. Even though the named insured on the AAIC policy was Surry County Emergency Services, Travelers contends that AAIC's policy, by its terms, extended coverage to "incidental operations" of Emergency Services, which, it claims, included the operations of the 911 call center. If indeed the AAIC policy were held to provide coverage for the loss, then Travelers would be entitled to receive contribution from AAIC.

3

The district court construed the language of the AAIC policy and concluded that it provided primary but not excess coverage to the employees in Surry County's 911 call center. Thus, the court held AAIC was liable to Travelers for $1 million.

We conclude that, even though there were slight differences in the language of AAIC's primary coverage and its excess coverage, both coverages were limited to employees of Surry County Emergency Services and did not extend to employees of the County's 911 call center. Accordingly, we affirm in part and reverse in part, concluding that AAIC's policy provided no coverage for the alleged negligence of Surry County and the two 911 dispatchers, and we remand for the entry of judgment in favor of AAIC.

I

In the early morning hours of May 20, 2019, Kathleen Woods, an occupant of a second-floor apartment in Dobson, North Carolina, called 911 to report that a fire had broken out on the first floor and to ask whether she should open the window to her unit. Robert Cook, the 911 dispatcher for Surry County who fielded the call, advised Woods to leave the window closed, believing that an open window would fuel the fire. At the same time, Joseph Shores, another Surry County 911 dispatcher, also fielded a call from an occupant in the building, who reported that she had just "jumped down" to safety from the second floor — a distance of 10 to 15 feet. Shores entered that information into the "CAD system," the 911 call center's shared database, which was available to Cook. Cook, however, did not ask Woods whether she was on the second floor, and Woods never received the advice that she could jump to safety. Accordingly, she left her window closed

4

and, as smoke filled the apartment, she and the three other occupants died from smoke inhalation.

The four decedents' estates sued Surry County, Cook, and Shores for wrongful death, alleging that Surry County inadequately supervised Cook and Shores and inadequately trained them to handle fire-related calls. They also alleged that Cook and Shores failed to act with reasonable care when they answered the 911 calls, particularly in failing to inform Woods that she and the others could have jumped to safety from the second-story apartment.

Surry County and its employees, Cook and Shores, were insured by a general liability policy issued by Travelers, with a policy limit of $1 million, and by an excess policy, with a policy limit of $8 million. When the plaintiffs demanded the policies' limits to settle their claims, Surry County insisted that Travelers accept the offer, and Travelers settled with the plaintiffs for $9 million.

Travelers then commenced this action against AAIC, which had also issued a policy to Surry County, seeking at least a 50% contribution for the loss, *i.e.*, at least $4.5 million.

AAIC's policy provided primary coverage of $1 million and excess coverage of $7 million. Nonetheless, AAIC contended that its policy did not cover all liability of Surry County, as did Travelers' policies, but only the liability of "Surry County Emergency Services," the named insured on its policy. Emergency Services was a department distinct from the "Emergency Communications Center," which handled 911 calls and dispatched responders and which we refer to as the "911 Call Center." While Emergency Services was responsible for responding to fires, hazardous-materials exposures, medical

5

emergencies, and other emergencies, the 911 Call Center was responsible for answering 911 calls and dispatching responders. Nonetheless, Travelers contended that, by extending coverage to "incidental operations," AAIC's policy also covered the operations of the 911 Call Center.

The primary coverage portion of AAIC's policy defined Emergency Services' coverage as follows:

> This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" or "professional health care services" covered by this insurance and arising out of the firefighting, ambulance, rescue or other emergency services, *including operations incidental thereto, of the covered emergency service organization(s) shown in the schedule*.

(Emphasis added). And the excess coverage portion of the policy defined Emergency Services' coverage as follows:

> This insurance applies only to the "injury or damage" covered by this insurance and arising out of the firefighting, emergency, rescue *or incidental operations of the emergency service organization(s) designated in the above Schedule*.

(Emphasis added). The "schedule" referred to in each provision designated "Surry County Emergency Services" as the named insured.

On cross motions for summary judgment, the district court concluded that AAIC's policy did indeed extend primary coverage to the operations of the 911 Call Center, but that it did not similarly extend excess coverage. Accordingly, it ordered AAIC to pay Travelers $1 million under its primary coverage provision, and it ruled in favor of AAIC on Travelers' claim under AAIC's excess coverage provision.

6

From the district court's judgment dated March 13, 2024, Travelers filed this appeal with respect to the district court's denial of coverage under the excess coverage provision of AAIC's policy, and AAIC filed a cross appeal with respect to the court's order that AAIC pay Travelers $1 million under the primary coverage provision of the policy.

II

"The interpretation of an insurance policy provision is," as with any contract, "a question of law." *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 115 (4th Cir. 2006) (cleaned up). And in interpreting a contract provision under North Carolina law, which the parties agree applies, we give undefined and nontechnical terms and phrases their ordinary meaning, *see Lumbermens Mut. Cas. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 321 S.E.2d 10, 12 (N.C. Ct. App. 1984), thus enforcing the contract according to its terms, *ABT Bldg. Prods.*, 472 F.3d at 116. But if the language of an insurance policy is susceptible to two interpretations, we will interpret the policy in favor of coverage. *See First Nat'l Bank of Anson Cnty. v. Nationwide Ins. Co.*, 278 S.E.2d 507, 515 (N.C. 1981).

Travelers argues that the terms of AAIC's policy — both in its primary coverage and excess coverage — should be construed to cover not only the activities of employees in Surry County's Emergency Services department but also the activities of employees in its 911 Call Center. While Travelers recognizes that the named insured on AAIC's policy was "Surry County Emergency Services," a functionally distinct department from Surry County's 911 Call Center, it notes that the policy's terms extend coverage to "incidental

7

operations." And because the 911 Call Center dispatched Emergency Services personnel to the Dobson fire, it maintains that the 911 Call Center's activity qualified as an "incidental operation[]" of Surry County Emergency Services.

The relevant terms of AAIC's primary coverage provide:

> This insurance applies only to [injury and damage] arising out of the firefighting, ambulance, rescue or other emergency services, *including operations incidental thereto, of [Surry County Emergency Services].*

(Emphasis added). And the relevant terms of its excess coverage provide:

> This insurance applies only to the "injury or damage" covered by this insurance and arising out of the firefighting, emergency, rescue *or incidental operations of [Surry County Emergency Services].*

(Emphasis added).

First, we conclude that the primary and excess coverage provisions provide the same scope of coverage. The policy extends *primary* coverage to "operations incidental" to firefighting, ambulance, rescue, or other emergency services "*of*" Emergency Services. And it extends *excess* coverage to "incidental operations *of*" Emergency Services. Both provisions thus extend coverage to incidental operations *of* Emergency Services.

The district court relied on the difference in the structure and language of the two coverage descriptions to conclude that they have different meanings. But we conclude that those differences are immaterial to their proper construction. The proper reading of each, we conclude, leads to the same resulting scope of coverage. In the primary coverage portion of the policy, the coverage extends to "firefighting, ambulance, rescue or other emergency services, *including operations incidental thereto*, of [Emergency Services]." The "including" clause is an appositive phrase, set off by commas, that makes "incidental

8

operations" part of the itemized list of covered services. But the entire list, including the appositive phrase, is modified by "of [Emergency Services]," such that all stated services, including incidental operations, must be provided by Emergency Services in order to be covered. In distinction, the description of excess coverage, instead of using an appositive phrase to include incidental operations, uses a straightforward list, stating that the policy covers Emergency Services' incidental operations. Specifically, it provides that coverage extends to "firefighting, emergency, rescue or *incidental operations of* [Emergency Services]." Thus, in both coverage descriptions, "incidental operations" are included in the coverage, and in both, all the listed services, including incidental operations, are to be those *of* Emergency Services.

While the parties agree that the descriptions of coverage in the two provisions have the same meaning and scope, they disagree on that meaning and scope. Travelers contends that the covered incidental operations can include services provided by other departments, such as the 911 Call Center's employees' dispatch of Emergency Services personnel in response to the Dobson fire. By contrast, AAIC contends that the covered incidental operations are only those that Emergency Services itself performs. We turn now to address this dispute.

If, in determining the scope of both provisions, we focus on the phrase "incidental operations" alone, untethered to any modifiers or restrictions, we might conclude that the phrase is broad and perhaps ambiguous, even though the policy designates "Surry County Emergency Services" as the named insured. But the phrase "incidental operations" in both provisions is not unrestricted. Rather, in both the primary and the excess coverage

9

provisions, the phrase is limited by the prepositional phrase, "of [Emergency Services]." The preposition "of," which introduces the prepositional phrase, functions "to indicate belonging or a possessive relationship." "Of," *Merriam-Webster's Collegiate Dictionary* 860 (11th ed. 2020). Thus, as used here, "of" indicates that the listed services *belong* to or are in a *possessive* relationship with Emergency Services. And when a word of possession links several listed operations to a single specified department, those listed operations cannot then be read to be linked to some other department as well. In short, both coverage provisions are most naturally read to cover operations that are directed, performed, or supervised by Emergency Services, and not by some other department of the Surry County government, such as its 911 Call Center.

To be sure, Emergency Services employees were, in this case, dispatched to respond to the Dobson fire. But the 911 calls from the occupants of the burning building, which formed the basis for Surry County's liability, were handled exclusively by employees of the 911 Call Center. And the services provided by the 911 Call Center, though interacting with Emergency Services' operations, are not themselves "incidental operations *of [Emergency Services]*." As a consequence, we conclude that AAIC's policy — both its primary and excess coverages — cannot reasonably be read to cover Surry County's liability for the conduct of its 911 Call Center employees.

Moreover, we agree with AAIC that Travelers' interpretation would lead to absurd consequences. If we were to extend the phrase "incidental operations" to cover activities beyond those of Emergency Services, the policy might provide coverage for persons having only the slightest relationship with Emergency Services. It might cover, for instance, the

10

negligence of the employees of the electric company furnishing power for Emergency Services' equipment, or the manufacturer of suits for the hazardous-materials team, or the coffee shop supplying the responders with morning coffee. Such consequences do not follow from a natural reading of the policy, which names as its insured only the Emergency Services department.

Nor does this interpretation sap the phrase "incidental operations" of its meaning. "Incidental" operations are simply those that are minor or unplanned relative to the department's core activities. *See* "Incidental," *Merriam-Webster*, *supra*, at 629. The policy might therefore extend coverage to Emergency Services employees as they refuel fire trucks, restock supplies in an ambulance, or attempt to retrieve a dog from a well or a cat from a tree. The key is that Emergency Services employees are performing or supervising each of those tasks. Its employees, by contrast, did not field the 911 calls that formed the basis for liability here, so AAIC's policy did not cover that liability.

Because we conclude that AAIC's policy did not provide coverage for the loss, either under its primary or excess coverage, we reverse the district court's ruling that AAIC's primary coverage required AAIC to pay Travelers $1 million for the loss, and we affirm its ruling that AAIC's excess coverage did not extend coverage for the loss. We remand for the entry of the appropriate judgment.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

11