THOMAS M. ROUSE, SANDY ROUSE, AND FEDERAL INSURANCE COMPANY,
PLAINTIFFS v. WILLIAMS REALTY BUILDING COMPANY, INCORPORATED,
DEFENDANTS

No. COA00-209

(Filed 17 April 2001)

### Insurance— fire—home under construction—full policy limits—ambiguity resolved in favor of insured

The trial court did not err by granting summary judgment in favor of the individual plaintiffs in an action to recover the full limit of liability of insurance proceeds of $2,369,000 with an off-set for the $1,774,381 already paid for loss by fire to plaintiffs' home while it was under construction, because: (1) where policy language is reasonably susceptible to either construction by the parties, the ambiguity is resolved in favor of the insured and against the insurer; (2) the insurance company's construction of the policy paragraph entitled "amount of insurance" improperly substitutes the term "limit of liability" for "amount of insurance" since express language to this effect could have been used in the policy had the parties intended this construction; (3) plaintiffs' construction properly contends the "loss settlement" paragraph of the policy determines the amount payable in the event of a covered loss which is determined by whether the "amount of insurance" is more or less than 80% of the full replacement cost of the building; and (4) although the "actual amount of insurance at the time of loss is $1,774,381, that amount is only 75.4% of the replacement cost while the policy requires the greater amount of 80% or $2,353,960 to be paid in addition to the reasonable expenses for debris removal of $15,040 which brings the total amount due under the policy to the limit of liability of $2,369,000.

Judge THOMAS dissenting.

Appeal by cross-claim defendant Federal Insurance Company from order entered 25 October 1999 by Judge Ronald L. Stephens in Superior Court, Wake County. Heard in the Court of Appeals 11 January 2001.

ROUSE v. WILLIAMS REALTY BLDG. CO.

[143 N.C. App. 67 (2001)]

*Everett Gaskins Hancock & Stevens, by E.D. Gaskins, Jr., for cross-claim plaintiffs-appellees Thomas M. and Sandy Rouse.*

*Brown, Crump, Vanore & Tierney, L.L.P., by Andrew A. Vanore, III, for cross-claim defendant-appellant Federal Insurance Company.*

TIMMONS-GOODSON, Judge.

Federal Insurance Company ("Federal") appeals from an award of summary judgment for Thomas M. and Sandy Rouse ("plaintiffs" or "the Rouses") on the question of whether they were entitled to receive the full limit of liability under a policy insuring their residence against loss by fire while the home was under construction. Having found no error of law, we affirm the ruling of the trial court.

Plaintiffs contracted with Williams Realty & Building Company ("Williams Realty") for the construction of a residence at 2745 Lakeview Drive in Raleigh, North Carolina. Pursuant to the agreement, an insurance agent for Williams Realty procured Federal policy number 2911-95-15 on behalf of the Rouses to cover the residence against fire and other perils while it was under construction. The policy provided that the limit of liability for Coverage A, the type of coverage applicable to the residence, was $2,369,000. The initial term of the policy was from 15 November 1996 to 15 November 1997; however, on 3 October 1997, Federal renewed and extended the policy through 15 November 1998. It is undisputed that the Rouses paid all premiums due under the policy and that the policy was in full force and effect when plaintiffs' claim arose.

Williams Realty had nearly completed construction of the residence when it was totally destroyed by fire on the morning of 19 December 1997. A Federal claims adjuster investigated the damage and determined that plaintiffs suffered a total loss worth $2,406,809. Plaintiffs, therefore, demanded payment in the amount of $2,369,000, the limit of liability under the policy. However, citing the "AMOUNT OF INSURANCE" provision set forth in an endorsement to the policy, Federal claimed that the limit of liability was "provisional" and that the actual amount of coverage afforded plaintiffs at the time of the loss was $1,774,381, which amount Federal tendered.

The Rouses brought an action against Williams Realty for negligence, breach of contract, and breach of fiduciary duty in failing to procure adequate insurance coverage for the residence. The Rouses

also filed a cross-claim against Federal, who had been joined as a plaintiff in the original action, alleging breach of contract for failing to pay "the full amount due under the policy." Thereafter, plaintiffs voluntarily dismissed their claims against Williams Realty without prejudice. The Rouses and Federal then filed cross-motions for summary judgment, and following a hearing on the motions, the trial court entered judgment for plaintiffs. The court ordered Federal to pay plaintiffs "the amount of $2,369,000, the limit of liability under the insurance policy at issue in this action, with an offset for the $1,774,381 previously paid; making the total amount currently due $594,619, plus interest at the legal rate from March 17, 1998, until paid." Federal gave timely notice of appeal to this Court.

By its sole assignment of error, Federal contends that in awarding summary judgment for plaintiffs, the trial court erroneously construed the provisions of the policy. Federal argues that under the terms of the policy, the amount of coverage afforded plaintiffs for the loss of their residence was $1,744,381. Therefore, Federal maintains that having tendered the total amount due under the policy, Federal was entitled to summary judgment. We cannot agree.

Summary judgment is an appropriate disposition if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999). The party moving for summary judgment has the burden of demonstrating the absence of any factual issue of consequence. *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 532, 530 S.E.2d 93, 94 (2000). This can be done by: "(1) proving that an essential element of the opposing party's claim is nonexistent; (2) showing through discovery that the opposing party cannot produce evidence to support an essential element; or (3) showing that the opposing party cannot surmount an affirmative defense." *Id.* at 532, 530 S.E.2d at 94-95.

"An insurance policy is a contract between the parties, and the intention of the parties is the controlling guide in its interpretation." *Bank v. Insurance Co.*, 49 N.C. App. 365, 370, 271 S.E.2d 528, 531 (1980), *rev'd on other grounds*, 303 N.C. 203, 278 S.E.2d 507 (1981). The parties' intent may be derived from the language employed in the policy. *Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C. App. 788, 789, 403 S.E.2d 571, 572 (1991). Thus, when presented with policy language that is explicit, "[o]ur courts have a 'duty to construe and

enforce [the policy] as written, without rewriting the contract or disregarding the express language used. . . . The duty is a solemn one, for it seeks to preserve the fundamental right of freedom of contract.' " *Id.* (quoting *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380-81, 348 S.E.2d 794, 796 (1986) (citation omitted)). Judicial construction is appropriate "only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation," *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999), *disc. review denied*, 351 N.C. 350, 342 S.E.2d 205 (2000), in which event, "this Court will resolve the ambiguity against the insurance company-drafter, and in favor of coverage," *Ledford v. Nationwide Mutual Ins. Co.*, 118 N.C. App. 44, 51, 453 S.E.2d 866, 869 (1995).

Moreover,

"[w]hen the policy contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise. . . . In the absence of such definition, nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise. . . . If such a word has more than one meaning in its ordinary usage and if the context does not indicate clearly the one intended, it is to be given the meaning most favorable to the policyholder, or beneficiary, since the insurance company selected the word for use."

*Kruger*, 102 N.C. App. at 790, 403 S.E.2d at 572 (quoting *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citations omitted)). In determining the meaning of a term,

resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony. Each word is deemed to have been put into the policy for a purpose and will be given effect, if that can be done by any reasonable construction in accordance with the foregoing principles [of construction].

*Trust Co.*, 276 N.C. at 355, 172 S.E.2d at 522.

The policy at issue in the case *sub judice* contains the following relevant provision:

ROUSE v. WILLIAMS REALTY BLDG. CO.

[143 N.C. App. 67 (2001)]

**AMOUNT OF INSURANCE**

The limit of liability stated in the declarations for Coverage A is provisional. The actual amount of insurance on any date while the policy is in force will be a percentage of the provisional amount. The percentage will be the proportion that the actual value of the property bears to the value at the date of completion.

. . . .

POLICY PROVISIONS

All other provisions of this policy apply.

Federal contends that this paragraph determines the maximum amount payable to plaintiffs under the policy. Focusing on the term "provisional," Federal takes the position that the stated limit of liability is "temporary" and fluctuates based on the percentage of the dwelling completed at the date of the loss. As Federal explains,

> In effect, the limit of liability represents Federal's maximum exposure under Coverage A for a loss. In the event of a loss, however, one does not automatically assume that the coverage is the provisional limit of liability shown on the declarations page. Rather, [the endorsement] provides clear and unambiguous instructions for determining the limit of liability "on any date while the Policy is in force."

> In the case at bar, that critical date is December 17 [sic], 1997, the date of the fire. In order to determine the <u>actual limit of liability</u> provided under Coverage A, the parties must determine the value of the dwelling property on the date in question. Next, they must determine the value that the dwelling property would have at the date of completion. These figures yield a percentage, which is then applied to the provisional limit of liability stated in the declarations page to determine the <u>actual limit of liability</u> for Coverage A on the particular date in question.

> . . . [T]he parties have stipulated that the actual value of the dwelling on December 19, 1997, was $2,353,960.00 and that the completed value would have been $3,141,244.00. These figures yield a percentage figure of 74.9%. Multiplying the provisional limit of liability found on the declarations page for Coverage A— Dwelling by 74.9%, in turn, yields a <u>limit of liability</u> in the amount of $1,774,381.00. (Emphasis added.)

We note that Federal's construction of the paragraph entitled "AMOUNT OF INSURANCE" substitutes the term "limit of liability" for "amount of insurance." Federal has thereby rewritten the second sentence of the paragraph to read as follows: "The actual ~~amount of insurance~~ [limit of liability] on any date while the policy is in force will be a percentage of the provisional amount." However, had the parties intended this construction, express language to this effect could have been used. We believe that by using the term "amount of insurance" as opposed to "limit of liability" in the above clause, the parties expressed their intent to accord different meanings to the terms. Therefore, we reject Federal's interpretation, inasmuch as it is repugnant to the plain language of the provision.

Plaintiffs propose a construction complementary to the policy language. Plaintiffs contend that as its title implies, the "Loss Settlement" paragraph of the policy determines the amount payable in the event of a covered loss. Pertinently, the provision states that:

Covered property losses are settled as follows:

. . . .

b.  Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the <u>amount of insurance</u> in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) the limit of liability under this policy that applies to the building;

(b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) the necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the <u>amount of insurance</u> in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will

ROUSE v. WILLIAMS REALTY BLDG. CO.

[143 N.C. App. 67 (2001)]

pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) the actual cash value of that part of the building damaged; or

(b) that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building. (Emphasis added.)

According to plaintiffs, the "amount of insurance" to which this provision refers is the sum calculated under the appropriately titled "AMOUNT OF INSURANCE" paragraph contained in the endorsement. Thus, the "actual amount of insurance" at the time of the loss is $1,774,381. Under the "Settlement Loss" provision, the payment amount is determined by whether the "amount of insurance" is more or less than 80% of the full replacement cost of the building. Here, the "amount of insurance," $1,774,381, is 75.4% of the replacement cost, which given these facts is $2,353,960. Therefore, section b(2) of the provision applies, and the insurer is required to pay the greater of the two amounts described in subsections b(2)(a) & (b), "but not more than the limit of liability." Under our facts, the greater amount is that to which subsection b(2)(a) refers—the actual cash value of the damaged dwelling, which is $2,353,960. Accordingly, the "Loss Settlement" due plaintiffs for the damage to their residence is $2,353,960.

The policy, however, also covers expenses for debris removal. Under the "OTHER COVERAGES" section of the policy, Federal agrees to "pay [the insureds'] reasonable expense for the removal of . . . debris of covered property if a Peril insured Against causes the loss." The provision further states that "[d]ebris removal expense is included in the limit of liability applying to the damaged property." Here, the cost to remove debris was $85,000. Thus, Federal is responsible for payment of $15,040 toward the debris removal, which brings the total amount due plaintiffs under the policy to the limit of liability, $2,369,000.

In sum, we conclude that under the plain language of the policy, plaintiffs are entitled to recover the full limit of liability. Notably, even

if we were to conclude that the policy language is reasonably suscep-tible to the interpretation offered by Federal, plaintiffs' construction, nonetheless, demonstrates an ambiguity, which would result in a con-struction against the insurance company. *See Ledford*, 118 N.C. App. at 51, 453 S.E.2d at 869 (stating that where policy language is reason-ably susceptible to either construction by the parties, the ambiguity is resolved in favor of the insured and against the insurer). Accordingly, we hold that the trial court did not err in awarding summary judgment for plaintiffs and in ordering Federal to pay plaintiffs "the amount of $2,369,000, the limit of liability under the insurance policy . . ., with an offset for the $1,774,381 previously paid; making the total amount currently due $594,619, plus interest[.]" The decision of the trial court is affirmed.

Affirmed.

Judge MARTIN concurs.

Judge THOMAS dissents.

THOMAS, Judge, dissenting.

The endorsement denominated "Dwelling under Construction" appears to be controlling and exclusive in determining the liability of Federal Insurance Company (Federal). Therefore, I respectfully dissent.

An "endorsement" is defined as "[a]n amendment to a contract, such as an insurance policy, by which the original terms are changed." American Heritage College Dictionary 454 (3d ed. 1997). In the case at bar, the Dwelling Under Construction endorsement, clearly listed on the "Dwelling Fire Policy" cover page, establishes the amount of insurance available to plaintiffs Thomas and Sandy Rouse (the Rouses) at any given time during construction. As noted on the first page of endorsements, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ CAREFULLY."

The Dwelling Under Construction endorsement reads as follows

> The limit of liability stated in the declarations for Coverage A is *provisional.* The *actual amount of insurance on any date while the policy is in force will be a percentage of the provisional*

*amount.* The percentage will be the proportion that the actual value of the property bears to the value at the date of completion.

Form DP 1143 (emphasis added).

When a provision in a contract "contains a definition of a term used in it, this is the meaning which *must* be given to that term wherever it appears in the policy, unless the context clearly requires otherwise. . . ." *Kruger v. State Farm Mut. Auto Ins. Co.*, 102 N.C. App. 788, 790, 403 S.E.2d 571, 572 (1991) (emphasis added). Here, the "Dwelling Under Construction" form is an endorsement to the policy, which necessarily alters it. Because endorsements are utilized to change or modify other provisions in the policy which ordinarily would be binding in establishing coverage or determining liability, anything else in the policy with which it conflicts becomes a nullity. *See generally Greenway v. North Carolina Farm Bureau Mutual Ins. Co.*, 35 N.C. App. 308, 313, 241 S.E.2d 339, 342-43 (1978).

As used, the distinction between "amount of insurance" and "actual limit of liability" is not meaningful. Further, the Rouses point to nothing in the contract, case law or the General Statutes that forbids Federal to use "amount of insurance" interchangeably with "limit of liability." It is common knowledge that the amount of insurance an insured has on property is the limit of liability for the insurer. This does not contravene the plain language meaning of the policy terms. Hence, there is no ambiguity. It is important to note that "the most fundamental rule [in interpreting insurance policies] is that the language of the policy controls. . . . [T]he court must enforce the policy as written and may not reconstruct [it] under the guise of interpreting an ambiguous provision." *Ledford v. Nationwide Mutual Insurance Company*, 118 N.C. App. 44, 50, 453 S.E.2d 866, 869 (1995) (quoting *Nationwide Mutual Ins. Co. v. Mabe*, 115 N.C. App. 193, 198, 444 S.E.2d 664, 667 (1994). Thus, the provision stands as exclusive.

This is a "Builder's Risk" policy. *See generally Baldwin v. Lititz Mutual Insurance Company*, 99 N.C. App. 559, 393 S.E.2d 306 (1990). One of the crucial words in the endorsement is "provisional," which sets the amount of insurance available, or the liability assumed by Federal, to be a changing amount as construction proceeds. As the percentage of the construction increases, the amount of insurance on the property increases. This was the parties' bargain. It is logical for a dwelling under construction to have varying coverage limits as it comes closer to its completion. Accordingly, the "limit of liability" is provisional, or temporary.

Federal was concerned with the potential for suffering a large loss. Correspondence was introduced as part of Federal's summary judgment motion, showing that the company had expressed such concern to its agent, Gilliams, Barbour, Barefoot & Yancey, Inc., who forwarded notice of Federal's list of "critical recommendations" to the Rouses and defendant Williams Realty & Building Company in January 1997. The list included placing fire extinguishers on site and installing a fire alarm system to be utilized during construction. The recommendations also contained a section that explained "while on site it was noted that the property had been vandalized. In an attempt to discourage future vandals, it is recommended that a driveway gate be installed throughout construction." R. pp. 57 and 61. In the letter from the insurance agent to the Rouses, it was observed that "[t]he largest losses that Chubb [Federal's parent company] has had have occurred during construction. They recently had a $800,000 loss under a Builder's Risk." (Sic). R. p. 62. In the letter to the Rouses the agent said, "Chubb is the best company in the country for large homes like yours but they are very strict. They recently paid a $800,000 fire loss on a dwelling under construction." R. p. 63.

The house was destroyed by fire, set by vandals, on 19 December 1997.

If the insurance coverage had been increased, or if calculations had been for the building to necessarily remain in a lower state of completion for a longer period of time, it would have been reasonable to expect a proportionate increase in the safeguards demanded by Federal. The amount of the premium paid by the Rouses, likewise, was based on a set of expectations.

It is undisputed that the provisional limit of liability was $2,369,000. It was stipulated that the actual value of the house on 19 December 1997 was $2,353,960 with the estimated completed cost to be $3,141,244. The house was therefore 74.9% complete at the time of the fire and, accordingly, the amount of insurance was 74.9% of $2,369,000, which totals $1,774,381. That is the amount already paid by Federal to the Rouses.

Indeed, if the building had been completed within the cost expectations which formed the basis of the policy—that construction would be completed at a total cost of $2,369,000—the Rouses would have either moved in prior to the time of the vandalism and fire or, certainly, would have had a more secure structure with completion exceeding 99%.

For these reasons, I respectfully dissent and vote to reverse the trial court's denial of Federal's summary judgment motion and the grant of the Rouses' motion for summary judgment.