WILLIAM SCOTT GILBERT AND WIFE, ANGELA R. GILBERT, PLAINTIFFS v. NORTH
CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANIES, DEFENDANT

No. COA01-1567

(Filed 31 December 2002)

**1. Appeal and Error—appealability—partial summary judgment—certification**

Although an appeal from the grant of partial summary judgment is ordinarily an appeal from an interlocutory order, this
appeal was properly before the Court of Appeals because the trial
court certified this case under N.C.G.S. § 1A-1, Rule 54(b).

**2. Insurance—homeowners—loss settlement provision—
replacement costs**

The trial court erred by awarding plaintiffs the replacement
cost value established by an appraisal award rather than the
actual cash value for hurricane damages covered by their homeowner insurance policy without requiring plaintiffs to rebuild or
repair as set forth in the loss settlement provisions of the pertinent insurance policy because: (1) the trial court improperly
found that the guaranteed replacement cost endorsement somehow voided the loss settlement provisions of the policy when the
endorsement only applies if the loss exceeds the policy limits of
$283,500.00; (2) the applicable provisions of the insurance policy
provided that plaintiffs were required to repair or replace the
damaged property in order to qualify for replacement cost coverage; and (3) the appraisal procedure is outlined in the policy and
there is no language indicating that it is a remedy exclusive of
other provisions of the policy.

Judge BRYANT dissenting.

Appeal by defendant from judgment entered 25 July 2001 by
Judge Ernest B. Fullwood in New Hanover County Superior Court.
Heard in the Court of Appeals 11 September 2002.

*Block, Crouch, Keeter & Huffman, L.L.P., by Auley M. Crouch,
III, and Christopher K. Behm, for plaintiff appellees.*

*Cox & Associates by J. Thomas Cox, Jr., for defendant
appellant.*

McCULLOUGH, Judge.

On 5 September 1996, plaintiff's residence, located at 201 Forest Hills Drive, Wilmington, North Carolina, was severely damaged by Hurricane Fran and its aftermath. Defendant provided insurance coverage pursuant to Homeowners' Insurance Policy Number HP 537794 effective from 15 June 1996 until 15 June 1997. Thus on 5 September plaintiff was fully covered by the aforementioned policy. Once defendant's adjuster and plaintiffs could not reach an agreement on the value of the loss, the policy's appraisal clause was invoked. That provision provided:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser . . . . The two appraisers will choose an umpire. . . . The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

As the appraisers could not agree, an umpire was chosen. The umpire issued an award setting the Replacement Cost Value at $270,891.35 and the Actual Cash Value at $230,257.55.

The policy's Loss Settlement provision provided that "[w]e will pay no more than the actual cash value of the damage unless: (a) actual repair or replacement is complete." Shortly thereafter, defendant tendered the balance of the Actual Cash Value paying a total of $230,257.55 to plaintiffs. Defendants contended that to be entitled to the replacement cost value plaintiffs would have to complete the needed repairs.

On 3 August 1999, plaintiffs filed suit alleging breach of contract, negligence, bad faith and unfair or deceptive trade practices. Defendant subsequently moved for summary judgment, and on 25 July 2001 the trial court entered partial summary judgment in favor of plaintiffs, entering the following Conclusions of Law:

> 1. This Court has jurisdiction over the parties and the subject matter of this hearing; namely, whether or not, as a matter of law, the Policy and Guaranteed Replacement Cost Endorsement provided that, where there was an Appraisal Award entered, the

**GILBERT v. N.C. FARM BUREAU MUT. INS. CO.**

[155 N.C. App. 400 (2002)]

Plaintiffs were entitled to be paid the replacement cost value established by the Appraisal Award without having to first prove to Defendant that the Plaintiffs had actually made the repairs to their Residence.

2. The Appraisal Clause of the Policy was designed to prevent litigation and insure finality in disputes over the amount of the Loss.

3. The determination of the umpire, which was agreed to and accepted unanimously by the appraisers for the parties, was a binding and final determination of the respective rights of the parties as to the amount of the Loss under the Policy and the Guaranteed Replacement Cost Endorsement.

4. In accordance with the Loss Payment clause of the Policy, the Plaintiffs were entitled to receive from Defendant the payment of the $270,891.35 replacement cost value established by the Appraisal Award within sixty (60) days of the date of the filing of the Appraisal Award with Defendant.

5. Plaintiffs are entitled to recover from Defendant, as a matter of law, the difference between the actual cash value previously paid by Defendant ($230,257.55) and the replacement cost value established by the Appraisal Award ($270,891.35); namely, $40,633.80.

6. As a result of the Court's conclusions above, the Court determines that a substantial right of the Defendant will be affected. Therefore, Defendant is entitled to an immediate right of interlocutory appeal pursuant to Rule 54 of the Rules of Civil Procedure as there is no just reason for delay of such appeal.

In its only assignment of error defendant argues that the trial court erred in awarding plaintiffs $40,633.80, the difference between the Actual Cash Value of $230,257.55 and the Replacement Cash Value of $270,891.35, without requiring plaintiffs to rebuild or repair as set forth in the policy.

[1] As this is an Order and Partial Judgment, the threshold question is whether such is appealable. "[A] grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677

(1993). Parties may appeal orders where (1) the denial of an appeal would affect a substantial right, N.C. Gen. Stat. § 1-277 (2001); or (2) in cases involving multiple claims or parties, a final judgment is entered as to one claim or party and the trial court certifies pursuant to Rule 54(b) that there is no just reason for delay. N.C. Gen. Stat. § 1A-1, Rule 54(b) (2001). As the trial court did certify that there was no just reason for delay, the order is properly before this Court.

[2] It is well settled in this state that where "contractual appraisal provisions are followed, an appraisal award is presumed valid and is binding absent evidence of fraud, duress, or other impeaching circumstances." *Enzor v. N.C. Farm Bureau Mut. Ins. Co.*, 123 N.C. App. 544, 545-46, 473 S.E.2d 638, 639 (1996).

In the case *sub judice* the trial court found that the Guaranteed Replacement Cost Endorsement controlled the appraisal, thus entitling plaintiffs to the Replacement Cost Value instead of the Actual Cash Value, both of which were specified in the appraisal award. The trial court evidently found that this clause voided the Loss Settlement provisions of the policy.

Interpreting insurance policies is a matter of law. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). In doing so the courts have several well-settled principles. "[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986).

"As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). The intent may be derived from the language in the policy or contract itself. *Rouse v. Williams Realty Bldg. Co.*, 143 N.C. App. 67, 69, 544 S.E.2d 609, 612 (2001). If the policy is clear, the courts may not, under the guise of an ambiguity in the policy, rewrite the contract. *Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777.

In this case, the trial court erroneously found that the Guaranteed Replacement Cost Endorsement (HO-500) somehow voided the Loss Settlement provisions of the policy. In this the trial court erred as that endorsement only applies if the loss exceeds the policy limits of $283,500.00.

The policy contains the following language:

**3. Loss Settlement.** Covered property losses are settled as follows:

\* \* \* \*

> (4) We will pay no more than the actual cash value of the damage unless:

> (a) actual repair or replacement is complete[.]

While there are no North Carolina cases which address whether the insured is entitled to replacement costs without meeting the rebuild or repair clause requirements after an appraisal award, this Court can discern no reason to disregard the plain meaning of the contract provisions quoted above. To do otherwise would allow plaintiffs to reap a windfall profit from a loss. As one commentator has noted:

> "Under the applicable provisions of the insurance policy, Plaintiffs were required to repair or replace the damaged property in order to qualify for replacement cost coverage. This provision operates as a condition precedent to recovery of replacement costs. See generally Koenders, supra, at 848-852. The reason insurers place this provision in insurance policies is to prevent an insured from making a profit from a loss. See Johnny Parker, supra, at 298-99; Koenders, at 829."

Johnny Parker, *Replacement Cost Coverage: A Legal Primer*, 34 Wake Forest L. Rev. 295, 298-99 (1999).

Plaintiffs argue that the case of *N.C. Farm Bureau Mut. Ins. Co. v. Harrell*, 148 N.C. App. 183, 557 S.E.2d 580 (2001), *disc. review denied*, 356 N.C. 165, 568 S.E.2d 606 (2002) supports their case. In this plaintiffs are mistaken.

The facts of *Harrell* distinguish it from the case at bar. In *Harrell*, plaintiff insurance company appealed "from an order denying its motion to vacate an umpire's award and granting [insured's] motion for summary judgment." *Id.* at 183-84, 557 S.E.2d at 580-81. The plaintiff attacked the appraisal that awarded defendant money for damage to farm equipment as well as the equipment itself. Another provision in the insurance policy stated that damaged property paid for or replaced by the insurer became the property of the insurer. *Id.* at 184, 557 S.E.2d at 581. This Court upheld the appraisal award. *Id.* at 187,

557 S.E.2d at 583. Critical differences make the *Harrell* rationale inapplicable to the facts at bar: (1) the different procedural posture of the actions (vacation of a clear appraisal versus declaratory judgment action interpreting appraisal); and (2) the different types of appraisal (appraisal of damaged farm equipment with umpire's accompanying rationale versus appraisal of home damage with umpire's value computations but no explanation). In our view *Harrell* does not control the result here.

The appraisal procedure is outlined in the policy and there is no language indicating that it is a remedy exclusive of other provisions of the policy. Case law from other states supports the continued effect of the policy after resorting to the appraisal remedy. In *Central Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257 (Iowa 1991), the Iowa Supreme Court held that an appraisal agreement contract did not excuse compliance with other requirements of the insurance policy that the appointed appraisers be neutral.

For all the foregoing reasons, the order of the trial court is

Reversed.

Judge TYSON concurs.

Judge BRYANT dissents.

BRYANT, Judge, dissenting.

I disagree with the majority that the "Loss Payment" provision, requiring plaintiffs to first tender proof that repairs had been made prior to receiving the replacement cost value, applied as a condition precedent to modify the appraisal award. Therefore, I respectfully dissent.

In concluding that the trial court erred in granting summary judgment in plaintiffs' favor, the majority opinion first examines the trial court's conclusion that the "Guaranteed Replacement Cost Endorsement" voided the "Loss Settlement" provision. According to the majority, the trial court erred in so concluding because the endorsement only applied if the loss exceeded the policy limits, which is not the case *sub judice*.

I believe that the majority erroneously relies upon this assessment that the endorsement applies only if the loss exceeds the policy

limit. In fact the majority's assessment is not based on the actual content of the endorsement, as the endorsement does not appear in the record on appeal, but rather, is based upon a one-sided interpretation by defendant's own attorney. Furthermore, because it is not in the province of the trial court to recite conclusions of law in ruling on a motion for summary judgment, *see Vulcan Materials Co. v. Iredell County*, 103 N.C. App. 779, 781, 407 S.E.2d 283, 285 (1991), the trial court's conclusions do not dictate the scope of our review. Therefore, the propriety of the trial court's conclusion regarding the endorsement is irrelevant where we find other or alternative grounds upon which to affirm.

I am of the opinion that summary judgment was appropriate, not based upon the replacement endorsement, but upon the binding nature of the appraisal process. As aptly noted by the majority, "an appraisal award is presumed valid and is binding absent evidence of fraud, duress, or other impeaching circumstances." *Enzor v. N.C. Farm Bureau Mut. Ins. Co.*, 123 N.C. App. 544, 545-46, 473 S.E.2d 638, 639 (1996) (citation omitted). Our law governing appraisals, while strict, preserves the purpose of appraisal provisions "to settle the matter in controversy [and] save the expense of litigation." *N.C. Farm Bureau Mut. Ins. Co. v. Harrell*, 148 N.C. App. 183, 187, 557 S.E.2d 580, 582 (2001) (citations and internal quotation marks omitted).

The *Harrell* Court based its holding upon the above-stated, well-established principals of law. Unlike the majority, I find the crux of our holding in *Harrell* indistinguishable from the instant case and applicable for the following reasons.

First, the distinction in procedural posture between the case *sub judice* and that in *Harrell* as noted by the majority appears to be one without a difference.

Second, in the present case, similar to the circumstances in *Harrell*, a provision separate from the appraisal clause stated that the actual cash value would be tendered unless the insured proved that repairs had been completed. However, the policy's appraisal provision, virtually identical to the provision in *Harrell*, stated that where the parties cannot agree, as to the amount of the loss, they would submit to an appraisal. The provision further stated that when at least two of the three (two appraisers and one umpire) agree on an award, their decision "set[s] the amount of loss." Furthermore, the parties agreed that the appraisal would be binding.

GILBERT v. N.C. FARM BUREAU MUT. INS. CO.

[155 N.C. App. 400 (2002)]

If the parties had not submitted to the appraisal process, the "Loss Settlement" provision would have imposed certain conditions on plaintiffs' entitlement to the replacement cost value, including plaintiffs' obligation to prove that the necessary repairs had been completed. Instead, when the parties submitted to the contractual appraisal process, the resulting conclusion to that process "set the amount of loss."

Also, I believe that the majority's reliance on *Central Life Ins. Co. v. Aetna Cas. & Gur. Co.*, 466 N.W.2d 257 (Iowa 1991) is misplaced as that case is wholly distinguishable from the case *sub judice*. In *Central*, the insurance policy's appraisal provision stated that an appraiser was to be "disinterested," while the "Agreement for Appraisal," entered into after the parties elected appraisal and independent of the insurance policy, did not set forth the same appraiser qualifications. *Id.* at 259. Given the plaintiff's subsequent agreement to pay its appraiser a contingency fee based upon the amount of loss assessed, the defendant filed for summary judgment, arguing that such payment rendered the appraiser interested in contravention of the policy's appraisal provision. *Id.* at 259-60. Given these facts, the Iowa Supreme Court concluded that the policy's appraisal provision, requiring appraisers to be disinterested, controlled over the appraisal agreement which did not expressly dictate such qualification. *Id.* at 260-61. If anything, *Central* supports a position opposite that adopted by the majority—that the appraisal process and the corresponding insurance policy provision results in a binding award.

The majority notes that the appraisal provision in the present case does not indicate that a resulting appraisal is the exclusive remedy. I disagree, as the provision expressly states that the appraisal process "set[s] the amount of loss." I would also note the glaring absence in the appraisal provision of a reservation, by defendant, of its rights to modify the appraisal award. *See High Country Arts & Craft Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 634 (4th Cir. 1997) (finding that insurer retained its rights to deny a claim, even following an appraisal process, because insurer had inserted language in the insurance policy stating that it retained that right even if an appraisal was conducted). In the absence of such a provision, I cannot agree with the majority that the "Loss Settlement" provision modifies an otherwise binding appraisal.

For the above-stated reasons, I would affirm the trial court's order granting partial summary judgment in favor of plaintiffs.