THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA, Plaintiff v. JACK JOHNSON BOLLINGER and JEAN BONDURANT, Defendants

No. COA03-32

(Filed 16 December 2003)

### 1. Insurance— life insurance—proceeds from policy—beneficiary not changed

Summary judgment was properly granted for defendant Bollinger in an action to determine entitlement to the proceeds from an insurance policy assigned in a separation agreement. The policy is clear and unambiguous; defendant Bondurant was the assignee of the policy but had the right to change the beneficiary designation from defendant Bollinger to herself only until the death of the insured (her ex-husband).

### 2. Trusts— constructive—evidence not sufficient

The circumstances did not give rise to a constructive trust to receive life insurance benefits where the policy was assigned to defendant Bondurant in a divorce settlement, but the beneficiary designation was never changed. There was no evidence of collusion by the beneficiary, Bollinger, no indication that there was a confidential relationship between Bondurant and Bollinger, and Bondurant has adequate remedies at law for claims of fraud.

Appeal by defendant Jean Bondurant from order entered 31 October 2002 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals 8 October 2003.

*Hill, Evans, Duncan, Jordan & Beatty, by William W. Jordan and Richard T. Granowsky, for defendant appellant.*

*Wyatt Early Harris Wheeler, L.L.P., by Jason Moss, for defendant appellee.*

OLD LINE LIFE INS. CO. OF AM. v. BOLLINGER

[161 N.C. App. 734 (2003)]

TIMMONS-GOODSON, Judge.

Defendant Jean Bondurant ("Bondurant") appeals from an order of the trial court granting summary judgment to defendant Jack Johnson Bollinger ("Bollinger") in this interpleader action. For the reasons stated herein, we affirm the order of the trial court.

The pertinent facts of the instant appeal are as follows. Bondurant married Jimmie Castle Bollinger ("Jimmie") on 30 November 1974. Jimmie purchased two life insurance policies in 1975 and 1977. Both policies listed Bondurant as the beneficiary. Jimmie and Bondurant subsequently divorced on 30 May 1989 and entered into a settlement agreement on 4 October 1990, resolving in part the equitable distribution claim. The settlement required Jimmie to assign said insurance policies to Bondurant, who paid the policy premiums until Jimmie's death. Pursuant to the settlement agreement, Jimmie provided Bondurant with the original insurance policies and original beneficiary endorsements, which listed Bondurant as the beneficiary designee. However, without Bondurant's knowledge, Jimmie changed the designated beneficiary designees for said insurance policies before he entered into the 4 October 1990 settlement agreement with Bondurant. At the time of the settlement agreement, the designated beneficiaries on the policies were Jimmie's mother, Annie Laura Bollinger as primary beneficiary, and Bollinger as contingent beneficiary. Annie Laura Bollinger pre-deceased Jimmie, thus elevating Bollinger to the status of primary beneficiary of said policies. Bondurant did not change the beneficiary designation on either policy after the settlement agreement assigned them to her.

After Jimmie died, both Bondurant and Bollinger petitioned plaintiff, The Old Line Life Insurance Company of America ("Old Line"), for the proceeds of said policies. Old Line commenced an interpleader action to determine who was entitled to the insurance proceeds at issue. Bondurant asserted a crossclaim against Bollinger arguing that if the court found Bollinger had superior legal title to the proceeds, the proceeds should be held in a constructive trust for the benefit of Bondurant. Both Bondurant and Bollinger moved for summary judgment. The Honorable Peter M. McHugh granted Bollinger's motion for summary judgment and dismissed Bondurant's crossclaim. From the order granting summary judgment to Bollinger and dismissing Bondurant's crossclaim, Bondurant appeals.

Bondurant brings forth two assignments of error on appeal. Bondurant argues that the trial court erred when it granted

Bollinger's motion for summary judgment and further that if Bollinger is awarded the proceeds of said insurance policies, there are genuine issues of material fact in dispute regarding whether the money should be held in a constructive trust for the benefit of Bondurant.

**[1]** Summary judgment is appropriate when there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001); *Lorbacher v. Housing Authority of the City of Raleigh*, 127 N.C. App. 663, 669, 493 S.E.2d 74, 77 (1997). The moving party must establish that there is an absence of a triable issue of fact. *Moore v. Bryson*, 11 N.C. App. 260, 262, 181 S.E.2d 113, 114 (1971). All evidence must be considered in the light most favorable to the nonmoving party. *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App. 347, 350, 363 S.E.2d 215, 217, *disc. review denied*, 322 N.C. 111, 367 S.E.2d 910 (1988).

Interpreting insurance policies is a matter of law. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970); *Gilbert v. N.C. Farm Bureau Mut. Ins. Cos.*, 155 N.C. App. 400, 403, 574 S.E.2d 115, 118 (2002), *aff'd per curiam*, 357 N.C. 244, 580 S.E.2d 691-92 (2003). It is well settled that an insurance policy is a "contract and its provisions govern the rights and duties of the parties thereto." *Gilbert*, 155 N.C. App. at 403, 574 S.E.2d at 118 (quoting *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)). To determine the intent of the policy, our courts look to the language of the policy itself. *Rouse v. Williams Realty Bldg. Co.*, 143 N.C. App. 67, 69, 544 S.E.2d 609, 612, *aff'd per curiam*, 354 N.C. 357, 554 S.E.2d 337 (2001). "If the policy is clear, the courts may not, under the guise of an ambiguity in the policy, rewrite the contract." *Gilbert*, 155 N.C. App. at 403, 574 S.E.2d at 118.

The pertinent policy provisions in the instant appeal are as follows.

BENEFICIARY

The beneficiary is as designated in the application for this policy, unless changed. The beneficiary may be changed while the insured is living, by written notice on a form satisfactory to the Company . . . The beneficiary at the insured's death will be as provided in the beneficiary designation then in effect.

. . . .

ASSIGNMENT

> The rights of the owner and any beneficiary are subject to the rights of any assignee of record with the Company.

The rights of the assignee are further defined in the assignment contract signed by Jimmie and an agent for the insurance company.

> The undersigned hereby assigns, transfers and sets over all rights, titles, interests and incidents of ownership in said policy unto said Assignee(s) as the separate property and estate of said Assignee(s) with the right to exercise all rights, benefits, privileges and options contained therein to receive dividends or any cash, loans or other values, if any, *to change the beneficiary*, to assign the policy, and to agree with the Company as to any release, modification or amendment to said policy . . . . (emphasis added).

Bondurant argues that as assignee of the policies, she holds superior title to the proceeds. Although the rights of the beneficiary are subject to the rights of the assignee on record, the policy clearly states that the right to change the beneficiary designation ceases upon the death of the insured. Thus, although Bondurant had the right to designate herself as beneficiary to said policies before Jimmie's death, she could not do so after he died. At the moment of Jimmie's death, Old Line was required to grant the proceeds of said policies to Bollinger as the beneficiary on record at the time of Jimmie's death. As the policy is clear and unambiguous, we must follow the language of the contract. We hold that the trial court properly granted Bollinger's motion for summary judgment, as there is no genuine issue of material fact as to Bollinger's entitlement to the proceeds.

[2] In Bondurant's second assignment of error, she argues that even if Bollinger is awarded the proceeds, there is a genuine issue of material fact regarding whether the proceeds should be held in constructive trust for her benefit. We disagree.

By definition, a constructive trust arises when "one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship." *United Carolina Bank v. Brogan*, 155 N.C. App. 633, 635, 574 S.E.2d 112, 114 (2002) (citations omitted). Constructive trusts are imposed to prevent the unjust enrichment of a party to property he acquired through

LUSTER v. GOOCH SUPPORT SYS., INC.

[161 N.C. App. 738 (2003)]

fraud, breach of duty, or some other circumstance making it inequitable for him to retain it. *Brogan*, 155 N.C. App. at 636, 574 S.E.2d at 115.

In the case *sub judice*, there is no evidence in the record that Bollinger colluded with Jimmie to fraudulently transfer the insurance proceeds to Bollinger upon Jimmie's death. Furthermore, Bondurant has had no relationship with Bollinger since her divorce from Jimmie, and there is no indication that the relationship between Bondurant and Bollinger was ever of a confidential nature. Bondurant has adequate remedies at law to pursue claims of fraud against Jimmie's estate or Bollinger personally. Thus, we conclude that the circumstances as alleged herein, even taken in the light most favorable to Bondurant, do not give rise to a constructive trust.

Affirm.

Judges HUDSON and ELMORE concur.