State v. McClure, et al., 2005 NCBC 6

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 03-CVS-005617 |

STATE OF NORTH CAROLINA, *ex rel.*
ROY COOPER, ATTORNEY GENERAL, AND
NORTH CAROLINA DEPARTMENT OF
ENVIRONMENT AND NATURAL RESOURCES,
                                        Plaintiffs,

            v.

DARIN M. MCCLURE, THOMAS A. PROCTOR,
MID-ATLANTIC ASSOCIATES, P.A.,
CATHERINE A. ROSS, CBM
ENVIRONMENTAL SERVICES, INC., KEITH A.
ANTHONY, SHIELD ENGINEERING, INC.,
WILLIAM A. QUARLES, MATTHEW R.
EINSMANN, S&ME, INC., MICHAEL D. SHAW,
SEI ENVIRONMENTAL, INC., and the NORTH
CAROLINA ENVIRONMENTAL SERVICE
PROVIDERS ASSOCIATION, d/b/a NCESPA,
JAMES H. HAYS, ENVIRONMENTAL
CONSERVATION LABORATORIES, INC., d/b/a
ENCO, PETER I. BYER, SOUTH ATLANTIC
ENVIRONMENTAL DRILLING AND
CONSTRUCTION COMPANY, INC., d/b/a
SAEDACCO, JOHN A. HILL, ALMES &
ASSOCIATES, INC, and JOHN DOES 1
THROUGH 100,
                                        Defendants.

**ORDER**

-

-
-

This matter is before the Court on plaintiffs' Motion for Reconsideration of three rulings in the Court's December 14, 2004 Order and Opinion. Plaintiffs request the Court to reconsider: (1) the dismissal of plaintiffs' claims under N.C.G.S. § 75-1.1; (2) the dismissal of plaintiffs' damages claims against Defendant Catherine A. Ross ("Ross") on the basis of non-profit immunity under N.C.G.S. § 55A-8-60(a) for her role as an officer and director of the North Carolina Environmental Service Providers Association ("NCESPA") and (3) the dismissal of all damages claims against Ross and Defendant CBM Environmental Services, Inc. ("CBM"), under N.C.G.S. § 133-28.

After reviewing the memorandum in support of plaintiffs' motion and for the reasons below, this Court denies the motion for reconsideration in part and grants it in part. Plaintiffs claims under N.C.G.S. § 133-28 are reinstated.

I.

UNFAIR AND DECEPTIVE TRADE PRACTICES

Plaintiffs first ask the Court to reconsider the ruling dismissing the claims for unfair and deceptive trade practices under N.C.G.S. § 75-1.1. Plaintiffs contend that the Court erred in reasoning that the rate-setting abilities of the Department of Environment and Natural Resources ("DENR") provided by existing regulation and statute prevented plaintiffs from utilizing the unfair trade practices statute. The Court relied upon the reasoning of the Supreme Court in HAJMM v. House of Raeford Farms, 328 N.C. 578,

595, 403 S.E.2d 483, 493 (1991), which reasoned "that the existing state and federal statutory framework pervasively regulated securities transactions, and extending UDTPA into the securities regulation arena would create overlapping supervision and enforcement issues." *State v. McClure*, 2005 NCBC 3 ¶ 70 (Wake County Super. Ct., Dec. 14, 2004)(Tennille, J.)(citing *HAJMM*, 328 N.C. at 594, 403 S.E.2d at 493). Plaintiffs claim that other remedies under the Leaking Petroleum Underground Storage Tank Cleanup statute ("Trust Fund Act") are not analogous to the pervasive statutory framework regulating securities transactions and therefore the Court's reliance on the reasoning of *HAJMM* is misplaced. Further, plaintiffs argue that the remedies available under the Trust Fund Act may not adequately address the violations. Therefore, plaintiffs opine that their only non-speculative remedy for the alleged behavior of defendants falls under N.C.G.S. § 75-1.1.

The Court rejects plaintiffs' arguments. While "[i]t is not clear at this point", Mot. at 5, to plaintiffs whether civil penalties may be pursued under the Trust Fund Act, it is clear that plaintiffs failed to make use of all available remedies. The statutory framework regulating the reimbursement of non-state lead work and state lead work provides the authority to supervise and enforce the provisions regulating the cleanup of underground storage tanks. Plaintiffs failed to use the regulations provided—instead seeking to use the more ambiguous unfair and deceptive trade practices statutes. Opening the door to N.C.G.S. § 75-1.1 would create overlapping supervision and enforcement issues. The regulatory civil penalties provide remedies—both civil and criminal. If there is no "tested" regulatory scheme it is because the State has not tried to use it. If needed, additional remedies should be provided by legislation. With the reinstatement of the claims under G.S. § 133-28, the State has enough arrows in its quiver without unduly complicating the litigation by making use of a statute that was not intended for the purpose for which the State wishes to use it while there are other remedies specifically provided for the conduct at issue.

Plaintiffs also ask the Court to reconsider the dismissal of claims pursuant to N.C.G.S. § 75-1.1 in so far as the ruling limits the ability of plaintiffs to seek remedies pursuant to antitrust laws. Specifically, plaintiffs argue that N.C.G.S. § 75-15.2, which authorizes civil penalties for claims brought by the Attorney General, is available only where the defendant is found to have violated N.C.G.S. §75-1.1. If the statute applied, the civil penalties would be recoverable. The Court has found that it does not apply because of the other remedies provided by statute which are directly related to the claims asserted here.

The dismissal of claims by the state under 75-1.1 does not preclude the state from bringing claims under 75-1 or 75-2. Additionally, there are treble damages provided for in G.S. § 133-28. It is difficult to conceive of a predicate act which would support a 75-1.1 claim that would not also give rise to liability under one of the other statutory remedies available to DENR.

II.

STATUTORY IMMUNITY PURSUANT TO N.C.G.S. § 55A-8-60

Plaintiffs ask the Court to reconsider the dismissal based on nonprofit officer and director immunity as to Ross under N.C.G.S. § 55A-8-60(a). The statute provides that "[a] person serving as a director or officer of a nonprofit corporation shall be immune individually from civil liability for monetary damages, except to the extent covered by insurance, for any act of or failure to act arising out of this service." N.C.G.S. § 55A-8-60(a). However, no immunity is provided for actions beyond the scope of their authority, not in good faith, or committed with gross negligence or willful or wanton misconduct.

N.C.G.S. § 55A-8-60(a)(2), (3) and (4). Plaintiffs argue that the Amended Complaint alleged facts sufficient to overcome Ross's immunity as an officer and director of NCESPA.

Again, DENR engages in some overkill. If it is determined that Ross and CBM engaged in an unlawful conspiracy with respect to the remaining claims, liability will be established. If they did not participate, there is little in the Amended Complaint to establish separate liability on the part of Ross solely by virtue of her position as an officer or director. DENR has not been denied a cause of action. Clearly, actions such as those alleged against defendant McClure would not fall within the immunity provisions. Evidence of defendant Ross's actions within NCESPA will be admissible in connection with the other claims pending against her. They do not provide grounds for separate liability as a director and officer.

III.

DAMAGES PURSUANT TO N.C.G.S. § 133-28

Finally, plaintiffs ask the Court to reconsider the dismissal of all claims against Ross and CBM for damages pursuant to N.C.G.S. § 133-28. The statute states:

(a) Any governmental agency entering into a contract which is or has been the subject of a conspiracy prohibited by G.S. 75-1 or 75-2 shall have a right of action against the participants in the conspiracy to recover damages, as provided herein. The governmental agency shall have the option to proceed jointly and severally in a civil action against any one or more of the participants for recovery of the full amount of the damages. There shall be no right to contribution among participants not named defendants by the governmental agency.

(b) At the election of the governmental agency, the measure of damages recoverable under this section shall be either the actual damages or ten percent (10%) of the contract price which shall be trebled as provided in G.S. 75-16.

N.C. Gen. Stat. § 133-28(a), (b) (2003). The Court found that DENR did not suffer any damages as a result of the alleged conspiracy because no contract was awarded to an alleged conspirator and that DENR therefore failed to meet the requirements for recovery under N.C.G.S. § 133-28(b). Although no contracts were awarded to parties engaged in the alleged conspiracy to inflate the contract prices, plaintiffs contend damages arose from the suppression of open competition in the bidding on the contracts. Plaintiffs argue that a lower bid "may well have been submitted." (Mot. at 17.)

The Court has concluded that it acted too hastily in dismissing this claim on a Rule 12(b)(6) motion. Plaintiffs suggest that under G.S. § 133-28 a defendant who has entered into an unsuccessful conspiracy to unlawfully affect a government contract is strictly liable for ten percent of the contract price even in the absence of any proof that the conspiracy affected price. What the evidence will show remains to be determined and the Court should have waited for summary judgment to make the decision on how the statute should be applied.

The circumstances here are certainly unique. It will be incumbent on the State to show that the CBM bid was submitted as part of a conspiracy to permit one of the conspirators to obtain the contract at an artificially inflated price or for some other unlawful purpose which injured the State. That determination is best made at a later stage. Depending on the development of the facts, there may also be an issue of what DENR can recover under the statute even if it is a strict liability statute. All the other defendants have settled and paid money to the State. If the monies paid thus far exceed ten percent of the

contract price or the total actual damages, may DENR recover an amount in excess of that amount?  For example, if there are twenty defendants can DENR sue each one for ten percent and recover two hundred percent of the contract price?  If an amount equal to ten percent has already been collected, may DENR still recover more from CBM and Ross?  Given DENR's position that there was price suppression it may well have to prove that a bid more than ten percent lower than the accepted bid would have been submitted.  It may be able to do so.  The reinstatement of this claim may muddy the waters in other respects.  CBM and Ross could assert contribution rights against the other named defendants.  What will be the result if they have already paid more than it is determined that CBM and Ross owe?  Development of a record will assist this Court and the appellate courts in addressing these issues.  For the foregoing reasons, the Court believes it erred in dismissing these claims at this time and will reinstate them.

CONCLUSION

In summary, the Court denies the motion for reconsideration on the dismissal of all unfair trade and deceptive practices claims, denies the motion for reconsideration on the dismissal of Ross under N.C.G.S. § 55A-8-60(a) and grants the motion for reconsideration on the dismissal of all claims for damages against Ross and CBM based on N.C.G.S. § 133-28.

SO ORDERED, this the ____ day of October 2005.